10-4220-cr
United States v. Cadet

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term 2011

(Argued: December 6, 2011                    Decided:   December 20, 2011)

Docket No. 10-4220-cr

UNITED STATES OF AMERICA,
        *Appellee*,

        -v.-

JOSEPH CADET,
        *Defendant-Appellant*.

————————

Before: MINER, CABRANES, and WESLEY, *Circuit Judges*.

————————

Appeal from a judgment of the United States District Court for the Eastern District of New York (Nicholas G. Garaufis, *Judge*) entered October 15, 2010, convicting defendant-appellant Joseph Cadet, after a jury trial, of 16 counts of aiding and assisting in the preparation of false federal income tax returns, in violation of 26 U.S.C. § 7206(2), and sentencing him principally to 41 months' incarceration, three years' supervised release, and restitution in the amount of $104,243.  This sentence exceeded the maximum term of imprisonment that may be imposed for each violation of 26 U.S.C. § 7206 (36 months), as well as the maximum term of supervised release that may be imposed for each violation (one year), 18 U.S.C. § 3583(b)(3).

The judgment of conviction entered by the District Court is affirmed, except with respect to certain aspects of the sentence, as to which the judgment is vacated and remanded for: (1) resentencing within the range authorized by statute; and (2) amendment of the restitution order to (a) determine whether the State and the City of New York are victims entitled to restitution (and adjust and apportion the restitution award accordingly), (b) exclude payments already made by the

individual taxpayer-clients to the Internal Revenue Service, and (c) exclude losses associated with a 2001 tax return that did not serve as a basis for any of the 16 counts of conviction.

AMANDA HECTOR (David C. Woll., Jr., Peter A. Norling, *of counsel*), Assistant United States Attorneys, *for* Loretta E. Lynch, United States Attorney, Eastern District of New York, Brooklyn, NY, *for Appellee the United States of America*.

EDWARD S. ZAS, Federal Defenders of New York, Inc., Appeals Bureau, New York, NY, *for Defendant-Appellant Joseph Cadet*.

JOSÉ A. CABRANES, *Circuit Judge*:

Defendant-appellant Joseph Cadet appeals from a judgment of the United States District Court for the Eastern District of New York (Nicholas G. Garaufis, *Judge*) entered October 15, 2010, convicting him, after a jury trial, of 16 counts of aiding and assisting in the preparation of false federal income tax returns, in violation of 26 U.S.C. § 7206(2), and sentencing him to concurrent terms of 41 months' incarceration, three years' supervised release, restitution in the amount of $104,243, and a $1,600 special assessment.

We affirm the judgment of conviction but vacate the sentence and remand the cause for the various reasons stated below.

## BACKGROUND

On July 8, 2008, a grand jury returned an indictment charging Cadet with 35 counts of aiding and assisting the preparation of false income tax returns, in violation of 26 U.S.C. § 7206(2).[1] The indictment alleged that Cadet knowingly and willfully prepared 35 false tax returns on behalf of ten clients between approximately April 15, 2003 and April 15, 2006. The indictment further alleged that Cadet obtained unwarranted tax refunds for his clients by inserting false or inflated deductions

---

[1] Under 26 U.S.C. § 7206(2), it is a felony for any person to "[w]illfully aid[] or assist[] in . . . the preparation or presentation under, or in connection with any matter arising under, the internal revenue laws, of a return, affidavit, claim, or other document, which is fraudulent or is false as to any material matter, whether or not such falsity or fraud is with the knowledge or consent of the person authorized or required to present such return, affidavit, claim, or document." 26 U.S.C. § 7206(2).

on the Schedules "A" (itemized deduction schedule), "C" (profit or loss from business schedule), and "E" (supplemental income or loss statement) attached to clients' individual income tax returns (Forms 1040). The overstated or falsified deductions included deductions for mortgage interest, job expenses, and losses associated with rental properties.

Prior to trial, the government moved *in limine* to introduce evidence in its case-in-chief of interactions between Cadet and an undercover Internal Revenue Service ("IRS") agent, Justin Green, in which Cadet proposed to use "creative financing" to prepare a Form 1040 for Green that would generate a fraudulent refund of over $2,400 in exchange for a higher fee. In a Memorandum & Order dated September 11, 2009, the District Court held that the evidence was admissible pursuant to Federal Rule of Evidence 404(b) ("Rule 404(b)")[2] for several non-propensity purposes, such as "demonstrating motive, intent, and corroboration" and "absence of mistake," noting that Cadet was contesting the willfulness of his conduct by arguing that, in preparing his clients' returns, he either relied on inaccurate information provided by the clients or made mistakes. The District Court also declined to exclude, under Federal Rule of Evidence 403,[3] the evidence of Cadet's interactions with

---

[2] Rule 404, "Character Evidence; Crimes or Other Acts," provides in relevant part:

**(b) Crimes, Wrongs, or Other Acts.**

**(1) Prohibited Uses.** Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

**(2) Permitted Uses; Notice in a Criminal Case.** This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

Fed. R. Evid. 404(b).

[3] Rule 403, "Excluding Relevant Evidence for Prejudice, Confusion, Waste of Time, or Other Reasons," provides:

The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Fed. R. Evid. 403.

Agent Green, finding the evidence "highly probative of a number of disputed issues" and the "risk of unfair prejudice" to be "quite small."

On September 15, 2009, the first day of trial, the District Court granted the government's motion to dismiss 15 of the 35 counts of the indictment. The remaining 20 counts arose from tax returns that Cadet had prepared and filed on behalf of five of the ten taxpayer-clients to whom the indictment referred.

The government's evidence at trial consisted principally of testimony from the five taxpayer-clients and Agent Green. All of the taxpayers testified that they gave Cadet truthful financial information and had no idea that the returns he prepared for them were inaccurate; that Cadet always carefully reviewed with them the financial information they provided to him; and that they always paid Cadet a modest, fixed fee regardless of whether the return claimed a tax refund or produced a tax deficiency.

Agent Green testified that, on April 4, 2006, he had visited Cadet's office pretending to be a construction worker in need of tax preparation services. Green testified that he gave Cadet several financial documents, including a W-2 form, a Form 1098 showing mortgage interest, and documents indicating a total of $300 in charitable deductions. Cadet did not ask a single question about any other financial variables that could affect Green's tax liability (*e.g.*, deductible job expenses, charitable contributions beyond the $300 indicated in his paperwork, professional expenses, or additional mortgage interest beyond the $9,556.60 stated on his Form 1098). Instead, Cadet entered the financial information on a computer and told Agent Green that he would owe more than $3,000 in federal taxes.

When Agent Green indicated that he could not afford such a payment, Cadet offered to recalculate the taxes using "creative financing" in exchange for a higher fee. Cadet then produced a revised Form 1040 for Green that included deductions for $24,056 in mortgage interest payments,

4

$1,723 in gifts to charity, $1,719 in cumulative job expenses, $755 in investment fees, and $905 in attorney and accounting fees, generating a tax refund of $2,458.

In addition to Agent Green's testimony, a secret recording of his visit to Cadet was played for the jury.

The District Court instructed the jury that they "may rely on the evidence of the alleged similar acts as a basis for corroborating the Government's witnesses, if you believe these witnesses in the first place," but also instructed the jury that they may not consider evidence of similar acts "for any other purpose" and "may not use this evidence to conclude that because the defendant committed [the acts to which Agent Green testified], he must have committed the acts charged in the indictment."

Following the jury trial, Cadet was convicted of 16 counts of aiding and assisting in the preparation of false federal income tax returns. The Presentence Report ("PSR") determined Cadet's total offense level to be 20 and placed him in Criminal History Category I, yielding a Guidelines range of imprisonment of 33 to 41 months. Pursuant to 26 U.S.C. § 7206, the maximum term of imprisonment that may be imposed for a violation of that statute is three years' incarceration (36 months), and the maximum period of supervised release that may be imposed on each count of conviction is one year. 18 U.S.C. § 3583(a), (b)(3) (2006).

The District Court sentenced Cadet to 41 months' imprisonment on each count of conviction, to run concurrently, as well as three years of supervised release. The District Court further ordered restitution in the amount of $104,243.[4] The $104,243 restitution figure was calculated to encompass losses caused by the specific conduct underlying the 16 counts of conviction, including losses suffered by the State and the City of New York as a result of Cadet's

---

[4] The District Court also ordered Cadet to pay a $1,600 special assessment.

preparation and filing of the federal income tax returns that gave rise to his conviction.[5] The restitution amount also included a loss amount of $3,691 stemming from a 2001 tax return that Cadet had prepared and filed on behalf of a client, which was not the basis of any of the 16 counts on which he was convicted.

The District Court further ordered that any amount that the five taxpayer-clients had resolved through settlement with or payment to the IRS would be excluded from the final restitution amount. Despite the fact that some of the taxpayer-clients made payments to the IRS in settlement of outstanding tax assessments, the District Court did not reduce the restitution order to reflect those payments.

On appeal, Cadet contends that the District Court erred in: (1) admitting evidence of Cadet's uncharged "crimes, wrongs, or acts" involving Cadet's interactions with Agent Green; (2) imposing a term of imprisonment and a term of supervised release that exceed the statutory maximum; and (3) including in the restitution order amounts that exceed those arising from the offenses of conviction and those for which payment had already been made, as well as losses incurred by the State and the City of New York as a result of the false tax returns underlying the 16 counts of conviction.

## DISCUSSION

### I. Evidence from Undercover IRS Agent

Cadet argues that the District Court abused its discretion in admitting, pursuant to Rule 404(b), evidence of Cadet's preparation of a tax return for undercover IRS agent Justin Green.

It is settled law that we review evidentiary rulings for abuse of discretion. *See, e.g.*, *United States v. Mercado*, 573 F.3d 138, 141 (2d Cir. 2009). A district court abuses its discretion when, for

---

[5] The District Court initially ordered Cadet to pay $342,105 in restitution—a figure that included the losses caused by conduct underlying all 35 counts of the original indictment—but later revised the figure to include only losses caused by the specific conduct underlying the 16 counts of conviction.

6

example, its evidentiary rulings are arbitrary, irrational, or simply erroneous as a matter of law. *See, e.g.*, *United States v. Paulino*, 445 F.3d 211, 217 (2d Cir. 2006); *cf. Sims v. Blot*, 534 F.3d 117, 132 (2d Cir. 2008) (explaining the term of art "abuse of discretion" as including errors of law). In general, erroneous evidentiary rulings entitle a defendant to a new trial, unless the error was harmless. *See* Fed. R. Crim. P. 52(a) ("Any error . . . that does not affect substantial rights must be disregarded."); *United States v. Abreu*, 342 F.3d 183, 190 (2d Cir. 2003) ("[W]e will not order a new trial because of an erroneous evidentiary ruling if we conclude that the error was harmless."). "An erroneous ruling on the admissibility of evidence is harmless if the appellate court can conclude with fair assurance that the evidence did not substantially influence the jury." *United States v. Jackson*, 301 F.3d 59, 65 (2d Cir. 2002) (internal quotation marks omitted).

The Federal Rules of Evidence prohibit the admission of "[e]vidence of a crime, wrong, or other act"—jointly, "other act" evidence—"to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," but the Rules permit such evidence to be admitted for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b); *see United States v. Aminy*, 15 F.3d 258, 260 (2d Cir. 1994) (using the term "other-act" evidence). To determine whether the District Court properly admitted "other act" evidence under Rule 404(b), "we consider whether: (1) the prior act evidence was offered for a proper purpose; (2) the evidence was relevant to a disputed issue; (3) the probative value of the prior act evidence substantially outweighed the danger of its unfair prejudice; and (4) the court administered an appropriate limiting instruction." *United States v. Garcia*, 291 F.3d 127, 136 (2d Cir. 2002).

When "other act" evidence is offered to show knowledge or intent in particular, as opposed to other non-propensity purposes such as proof of identity or corroboration of witnesses, such evidence must be "sufficiently similar to the conduct at issue" to permit the jury to draw a reasonable inference of knowledge or intent from the other act. *E.g.*, *United States v. Peterson*, 808

7

F.2d 969, 974 (2d Cir. 1987). "If the other-act evidence does not provide a reasonable basis for inferring knowledge or intent, its offer for that purpose should be rejected on grounds of relevance." *Aminy*, 15 F.3d at 260. Evidence of other acts need not be identical to the charged conduct to show knowledge or intent pursuant to Rule 404(b), so long as the evidence is relevant in that it provides a reasonable basis for inferring knowledge or intent. *See id.* ("Similarity, being a matter of relevancy, is judged by the degree in which the prior act approaches near identity with the elements of the offense charge[d]. There is no necessity for synonymity but there must be *substantial* relevancy . . . ." (quoting *United States v. Kasouris*, 474 F.2d 689, 692 (5th Cir. 1973)) (alteration and emphasis in original)).

Although Cadet's interaction with Agent Green was not *identical* to the interactions that the taxpayer-clients described in their testimony,[6] Cadet's preparation of a false return for Agent Green was "sufficiently similar" to the charged conduct to be relevant to—and indeed "highly probative of"—knowledge and intent. At trial, Cadet contested the willfulness of his conduct by arguing that, in preparing his clients' returns, he either relied on inaccurate information provided by the clients or made mistakes. Evidence that Cadet knowingly and intentionally prepared a false tax return for Agent Green by inserting inflated deductions on the Form 1040 thus provided a reasonable basis to infer that the inflated deductions that formed the basis for the 16 counts of conviction were likewise entered knowingly and intentionally.

Moreover, the high probative value of the evidence substantially outweighed the "risk of unfair prejudice," as it was accompanied by a careful limiting instruction by the seasoned District Judge to the jury that "[e]vidence of similar acts may not be considered by you for any other purpose," and "may not [be] use[d] . . . to conclude that because the defendant [committed the acts

---

[6] For example, the taxpayer-clients testified that Cadet neither suggested preparing a false tax return nor demanded a higher fee for doing so. In addition, Cadet prepared Agent Green's return during a visit on April 4, 2006, contemporaneous with five of the charges on which Cadet was indicted, but subsequent to 14 of the 16 counts on which Cadet was ultimately convicted.

8

to which Green testified], he must have committed the acts charged in the indictment." We presume that the jury followed this limiting instruction. *See United States v. Snype*, 441 F.3d 119, 129 (2d Cir. 2006) ("[T]he law recognizes a strong presumption that juries follow limiting instructions.").

Accordingly, the District Court did not abuse its discretion in admitting "other act" evidence regarding Cadet's preparation of a tax return for Agent Green.

## II. Terms of Imprisonment & Supervised Release

Cadet also argues that the District Court erred in imposing terms of imprisonment and supervised release that exceed the maximum penalties permitted for a violation of 26 U.S.C. § 7206.

We review the sentence imposed by the District Court under a plain error standard because Cadet failed to object to the terms of imprisonment and supervised release before the District Court. Of course, a sentence that exceeds the statutory maximum qualifies as plain error. *See, e.g.*, *United States v. A-Abras Inc.*, 185 F.3d 26, 30 (2d Cir. 1999) ("[O]ur precedents . . . make clear that 'an imposition of a sentence in violation of law [is] plain error.'" (quoting *United States v. Eng*, 14 F.3d 165, 172 n.5 (2d Cir. 1994))).

Upon review of the judgment of conviction, it is clear that the terms of imprisonment and supervised release imposed by the District Court exceed the maximum permitted by statute. As the government concedes, the maximum term of imprisonment that may be imposed for a violation of 26 U.S.C. § 7206(2) is three years' incarceration (36 months), and the maximum period of supervised release that may be imposed on each count of conviction is one year, 18 U.S.C. § 3583(b)(3) (2006). The District Court sentenced Cadet to 41 months of imprisonment on each count of conviction, to run concurrently, and three years of supervised release. Accordingly, a remand for resentencing is required.

9

### III. Restitution

Cadet also argues that the amount of restitution imposed by the District Court (1) erroneously included tax loss suffered by the State and the City of New York; (2) failed to account for losses that the individual taxpayer-clients already had resolved through settlement with or payment to the IRS; and (3) erroneously included a loss of $3,691 associated with a 2001 tax return that did not form the basis of any of Cadet's counts of conviction. "In the case of restitution orders, we review issues solely of law *de novo*, findings of adjudicative fact for clear error, and the multi-factor balancing aspects of such an order for abuse of discretion." *United States v. Jaffe*, 417 F.3d 259, 263 (2d Cir. 2005).

#### A. Losses to the State and City of New York

Pursuant to 18 U.S.C. § 3563, a district court may order a defendant to "make restitution to a victim of the offense" as a condition of supervised release. 18 U.S.C. § 3563(b)(2) (2006). The District Court did not make an explicit finding as to whether the State and the City of New York were proper victims entitled to restitution. Indeed, although the $104,243 restitution award included $14,974 in losses suffered by the State of New York and $10,809 in losses suffered by the City of New York,[7] the District Court ordered Cadet to pay the entire restitution amount *to the IRS*. The issue of whether the State and the City of New York were proper victims entitled to restitution is therefore not yet ripe for our review.

On remand, the District Court should clarify whether it intended to include losses to the State and the City of New York, or only the IRS, and should identify explicitly the appropriate apportionment of the restitution award between the victims.

---

[7] The $104,243 restitution award included $78,460 in losses suffered by the federal government, $14,974 in losses suffered by the State of New York, and $10,809 in losses suffered by the City of New York, based on the tax returns underlying the 16 counts of conviction.

**B. Inclusion of Payments by Taxpayer-Clients to Victims**

Although the District Court ordered that any amount that the five taxpayer-clients had resolved through settlement with or payment to the IRS would be excluded from the final restitution amount, the District Court did not reduce the total to be paid under the restitution order to account for payments that the taxpayer-clients have made to the IRS in settlement of outstanding tax assessments. *See United States v. Varrone*, 554 F.3d 327, 333 (2d Cir. 2009) (holding that, under the restitution provision of the supervised release statute, 18 U.S.C. § 3583, restitution can be ordered only for losses caused by the specific conduct that is the basis for the offense of conviction). On remand, the District Court should reduce the restitution amount accordingly.

**C. Losses from Uncharged Tax Return**

In addition, on remand the District Court should exclude the $3,691 loss associated with a 2001 tax return that Cadet filed on behalf of taxpayer-client Barton. The 2001 tax return was not charged specifically as a separate count of the indictment, and it was therefore error to include the $3,691 loss attributable to the 2001 tax return in the restitution calculation.

## *CONCLUSION*

The judgment of the District Court is **AFFIRMED** except with respect to certain aspects of the sentence, as to which the judgment is **VACATED** and **REMANDED** for:

(1) resentencing within the range authorized by statute; (2) amendment of the restitution order to:

(a)     determine whether the State and the City of New York are victims entitled to restitution (and adjust and apportion the restitution award accordingly);

(b)     exclude payments already made by the five taxpayer-clients to the IRS; and

(c)     exclude losses associated with a 2001 tax return that did not serve as a basis for any of the 16 counts of conviction. The mandate shall issue forthwith.

11