17-4022-cr (L)
United States v. Bernard Thomas

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 20th day of March, two thousand nineteen.

PRESENT:   DENNIS JACOBS,
                   GERARD E. LYNCH,
                                         *Circuit Judges*,
                   JANET C. HALL,
                                         *District Judge*.[*]

_____

UNITED STATES OF AMERICA,

                                         *Appellee - Cross-Appellant*,

               v.                                                          Nos. 17-4022-cr (L)
                                                                                    18-106-cr (XAP)

BERNARD THOMAS,

                                         *Defendant - Appellant - Cross-Appellee*.

_____

FOR APPELLANT - CROSS-APPELLEE:      PETER J. TOMAO, Garden City, NY.

---

[*]Judge Janet C. Hall, of the United States District Court for the District of Connecticut, sitting by designation.

FOR APPELLEE - CROSS-APPELLANT:     KEVIN TROWEL (David C. James, *on the brief*), *for* Richard P. Donoghue, United States Attorney, Eastern District of New York, Brooklyn, NY.

Appeal from the United States District Court for the Eastern District of New York (William F. Kuntz, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the district court is VACATED and the case is REMANDED for resentencing.

Bernard Thomas appeals from a judgment of conviction entered on December 15, 2017, by the United States District Court for the Eastern District of New York, sentencing him principally to 51 months' imprisonment and three years' supervised release, after a jury found him guilty of being a felon in possession of ammunition in violation of 18 U.S.C. §§ 922(g). The government cross-appeals, challenging the district court's conclusion that the enhanced sentencing provision of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(1), does not apply to Thomas. We assume the parties' familiarity with the facts, the procedural history, and the issues on appeal, which we discuss only as necessary to explain our decision.

Thomas was originally tried on the theory that he possessed ammunition in the form of a spent shell casing. Thomas, a police informant, claimed that, at the request of an acquaintance, he had briefly safeguarded a gun that had been used in a shooting during an apparent mugging attempt, and then retained the casing in order to turn it over to the

2

police. After the jury was unable to reach a verdict, the government obtained a superseding indictment and altered its trial tactics, arguing at a second trial that Thomas was himself the shooter, and possessed ammunition in the course of the shooting. (Thomas was not, however, charged with the shooting itself.) The second jury found him guilty of being a felon in possession of ammunition.

Thomas raises four challenges to his conviction, and argues that his sentence was both procedurally and substantively unreasonable.

**I. Thomas's Claims of Trial Error**

***First,*** Thomas argues that the district court abused its discretion when it interviewed and then dismissed a juror during deliberations, after the government asserted that one of its witnesses, a police detective, had heard the juror say "huh, liars," loud enough for the witness and other jurors to hear, during his testimony. App'x 394. Thomas argues that the district court's decision was an abuse of discretion, was based on erroneous fact findings, and violated his constitutional right to a fair trial. We disagree.

Under Federal Rule of Criminal Procedure 24(c)(3), the district court is authorized to dismiss a juror during deliberations and replace him or her with an alternate juror, so long as deliberations begin anew. *See, e.g.*, *United States v. Delva*, 858 F.3d 135, 158 (2d Cir. 2017). "We review for abuse of discretion the district court's handling of alleged juror misconduct," according the district court "broad flexibility, mindful that addressing juror misconduct always presents a delicate and complex task." *United States v. Farhane*, 634 F.3d 127, 168 (2d Cir. 2011) (internal quotation marks omitted). The standard for

removing a juror under Rule 24(c) is "good cause." *Delva*, 858 F.3d at 158. We review the factual findings underlying a district court's decision to dismiss a juror for clear error. *See, e.g.*, *United States v. Baker*, 262 F.3d 124, 130–31 (2d Cir. 2001) (deferring to the district court's judgment in its dismissal of a juror for failure to deliberate).

We find no abuse of discretion or clear error here. The district court acted reasonably in choosing to interview the juror after learning of possible misconduct, did not clearly err in finding — given the similarities between the juror's answers and the witness's account — that the juror had expressed an opinion about the case to fellow jurors in violation of the court's instructions, and did not abuse its discretion in determining that removing the juror was appropriate. While we can imagine other courses of action that the district court might have taken, we identify no error in its actions.[1]

***Second,*** Thomas contends that the evidence was insufficient to support the jury's finding that he was guilty of knowingly possessing ammunition. He does not, however, argue that the evidence was insufficient to allow a reasonable jury to conclude that Thomas shot the victim, and possessed ammunition in the course of doing so. Rather, he argues that, as a matter of law, a "spent shell casing" is not ammunition within the meaning of the statute, and that, as a matter of fact, Thomas did not know that a spent shell casing was ammunition. That argument fails for two reasons. First, at the trial at which Thomas was convicted, the government's theory of the case was not that Thomas

---

[1] The parties disagree about whether Thomas adequately raised his objections below; however, we need not resolve that dispute as we find no error or abuse of discretion even on the assumption that the issue was properly preserved for appeal.

4

possessed a spent shell casing in the aftermath of the shooting, but rather that he possessed live ammunition when he shot the victim. Second, Thomas did not argue to the jury that he was unaware that a spent shell casing constituted ammunition; instead, he argued that he was operating as a police informant, and thus had either actual or apparent authority to possess the ammunition. Indeed, Thomas expressly conceded in closing that if he had possessed the spent shell casing without authority, it would be a crime. Gov't App'x 90. Thus, his argument on appeal is both moot and waived.

*Third,* Thomas argues the district court erred when, during the cross-examination of another police detective, it sustained the government's objection to a question about whether the acquaintance of Thomas's, who Thomas contended had committed the shooting, was also a police informant. We review a trial court's evidentiary rulings deferentially, reversing only for abuse of discretion. *United States v. Quinones*, 511 F.3d 289, 307 (2d Cir. 2007). We will find such abuse only where the evidentiary rulings are "arbitrary and irrational." *Id.* at 308, quoting *United States v. Dhinsa*, 243 F.3d 635, 649 (2d Cir. 2001). Even where the district court has erred, we will not order a new trial if the error is harmless. *United States v. Cadet*, 664 F.3d 27, 32 (2d Cir. 2011). Here, the district court acted neither arbitrarily nor irrationally when it limited the cross-examination.

The district court reasonably accepted the government's argument that the possible prejudice to public safety that could arise from questioning about the identities of police informants outweighed the slight probative value of such questions. The defense theory was that Thomas's acquaintance was the shooter, but that the police had chosen to frame

5

Thomas to protect the acquaintance, who was an informant. The defense offered little basis for its assertion that the acquaintance was an informant, nor any coherent reason why the police would choose to frame one informant, Thomas, to protect another. Since the theory that the question was designed to further was entirely speculative, and lacked a basis in the record, its probative value was minimal. Moreover, the trial evidence, in the form of hospital records, conclusively established that Thomas's acquaintance was undergoing tests in a hospital emergency room at the precise time of the shooting. We therefore conclude that the district court did not err, and that even if it did, any error was harmless.

*Fourth,* Thomas argues that the district court erred in its jury instructions. The language to which he now objects, however, was included in the instructions only at the request of the defense. The argument has therefore been affirmatively waived.

In instructing the jury, the district court first defined ammunition, in language taken verbatim from the statutory definition of the term in 18 U.S.C. § 921(a)(17)(A):

> Ammunition is ammunition or cartridge cases, primers, bullets, or propellant powder designed for use in any firearm.

After then defining the element of possession, including the requirement that the jury find *knowing* possession, the court went on to say that:

> To satisfy this element, you must also find that the defendant knowingly possessed the ammunition. That means that he possessed the ammunition purposely and voluntarily and not by accident or mistake. *It also means that he knew that the shell casing was ammunition.*

6

App'x 384. Thomas objects to the italicized language, arguing again that mere shell casings are not ammunition.

That language, however, was included in the instructions at the request of the defense. The government's requests to charge did not contain any such language. The defense originally suggested that the court, after defining the knowing possession requirement in terms substantially similar to the language quoted above, should add the following sentence: "It also means that he knew the shell casing was ammunition, as we commonly use the word." The court's proposed charge adopted that suggestion in its entirety, but at the charge conference, the government objected. The district court, noting the tension between first giving the jurors the statutory definition of ammunition, and then later instructing the jurors to apply whatever meaning the word has "as we commonly use [it]," opted to delete that phrase, leaving only the first half of Thomas's proposed instruction. Accordingly, as noted above, the addition to the proposed charge, as actually given to the jury, read only: "It also means that he knew that the shell casing was ammunition." App'x 384. While the defense objected to the excision of the phrase "as we commonly use the word," it never suggested that its proposed language be deleted entirely if the modifying clause was stricken.

We review challenges to jury instructions *de novo*, finding an instruction to be erroneous where "it misleads the jury as to the correct legal standard or does not adequately inform the jury of the law." *United States v. Lange*, 834 F.3d 58, 75 (2d Cir.

7

2016) (internal quotation marks omitted). To the extent that Thomas objects to the deletion of the phrase "as we commonly use the word," we find no such error. The omission does not mislead the jury as to the correct legal standard. Indeed, it is more likely that the *inclusion* of the phrase would have done so, as the requested phrase is, to say the least, in tension with the previously-given statutory definition of ammunition.

To the extent that Thomas now argues that the first half of the instruction — "[i]t also means that he knew the shell casing was ammunition"— was erroneous, that argument is foreclosed. We need not address whether a spent shell casing is distinct from a "cartridge case," which is expressly included in the statutory definition. Even if the former term refers to something that does not come within the statutory definition, the reference to a "shell casing" was invited by Thomas when he requested the instruction. "The law is well established that if, as a tactical matter, a party raises no objection to a purported error, such inaction constitutes a true waiver which will negate even plain error review." *Quinones*, 511 F.3d at 321 (internal quotation marks omitted).

**II. Thomas's Sentencing Arguments**

Thomas appeals his sentence on both procedural and substantive reasonableness grounds. Procedurally, he argues that the district court erred by failing adequately to explain its reasons for imposing an above-Guidelines sentence, by stating in the written judgment and the accompanying statement of reasons different Guidelines ranges and legal findings than those adopted during the oral sentencing proceeding, and by including

8

in the judgment a number of special conditions of supervised release that were not alluded to during the oral sentencing.

Substantively, Thomas argues that the 51-month sentence is unreasonable, and challenges several of the special conditions of release — including, *inter alia*, the requirements that he submit to a "psychosexual evaluation" and that he comply with sex offender registration requirements — on the ground that they are not reasonably related to the offense or to Thomas's history or characteristics.

Because of our disposition of the government's cross-appeal, discussed below, we need not address these arguments at this time. Whether the prison sentence imposed is substantively unreasonable, whether the district court adequately explained its sentence, and whether the sentence must be vacated by reason of inconsistencies between the written and oral judgments are moot points, since we are in any event remanding for resentencing, and the court will have the opportunity to correct any arguable procedural errors. Similarly, with respect to the special conditions of supervised release, the judge will now have an additional opportunity, with the benefit of fully-developed arguments by the defense, to reconsider those conditions and, if he continues to believe that they are appropriate, to explain why that is so.

**III. The Government's Cross-Appeal**

The government argues that the district court erred in finding the enhanced penalty provision in the ACCA inapplicable to Thomas's case. The ACCA mandates a minimum

sentence of fifteen years in prison for a defendant convicted of violating § 922(g) who has three or more prior convictions for, *inter alia*, "violent felon[ies]." 18 U.S.C. § 924(e)(1). Developments in the law since the sentencing render some of the district court's conclusions no longer viable. Accordingly, a remand for resentencing is required.

At the time of sentencing, Thomas had been previously convicted of three New York state felonies — first degree robbery, attempted third degree robbery, and first degree sexual abuse. The district court concluded that "at least two" of those offenses — sexual abuse in the first degree and attempted robbery in the third degree — "do not qualify as crimes of violence" for purposes of the ACCA. App'x 525.[2] Recent case law, not available to the district judge at the time of sentencing, renders one of those conclusions incorrect, and the other questionable.

Cases decided after Thomas's sentencing make clear that all degrees of robbery and attempted robbery under New York law constitute violent felonies within the meaning of the ACCA. *United States v. Thrower*, 914 F.3d 770, 777 (2d Cir. 2019) (holding that New York robbery and attempted robbery in any degree are violent felonies under the ACCA); *see also Stokeling v. United States*, 139 S. Ct. 544, 555 (2019) (holding Florida robbery to be a violent felony under the ACCA); *cf. United States v.*

---

[2] The district court did not address whether first degree robbery is a violent felony under the ACCA. It did, however, suggest, in response to a question from the probation officer, that first degree robbery is not a crime of violence for the purposes of Sentencing Guideline § 2K2.1 – although the written guideline calculation later attached to the judgment was premised on the conclusion that it is. App'x 532.

*Pereira-Gomez*, 903 F.3d 155, 166 (2d Cir. 2018) (holding that New York robbery and attempted robbery in any degree is a crime of violence under the identically-worded career offender provisions of the Sentencing Guidelines).

The situation is less clear with respect to sexual abuse in the first degree. That offense is "divisible" in that it covers several types of conduct, defined in distinct statutory subdivisions. The government, relying on the Certificate of Disposition ("COD") entered in Thomas's conviction for that offense, contends that Thomas was convicted under New York Penal Law § 130.65(1), which requires "forcible compulsion." Thomas, however, argues that the COD is unreliable. *See United States v. Green*, 480 F.3d 627, 633–34 (2d Cir. 2007) (discussing possible computer anomalies that would automatically specify subdivision 1 on the COD form where a statute contained multiple subdivisions and no subdivision appeared on underlying documents).

The district court did not resolve this dispute. Rather, it concluded that even subdivision 1 did not define a violent felony under the categorical approach, because under New York law, "forcible compulsion" could be found in circumstances that in the court's view did not constitute force, such as "where a victim was hedged in by the coordinated actions of those around her and then subjected to unwanted sexual touching." App'x 526, citing New York cases. Although this very argument has now been discredited in the context of robbery, *see Pereira-Gomez*, 903 F.3d at 165–66, we have never addressed it in a published opinion in the context of sexual abuse in the first degree.

11

We need not do so now, however, in light of the possibility that Thomas was in fact convicted of that offense under the terms of another subdivision that the government does not contend would constitute a violent felony. If Thomas is correct about that question, he would have only two prior convictions for violent offenses, and the ACCA would not apply.[3] If, however, the government can establish, consistent with the procedures set forth in *Green*, that his conviction was for violation of subdivision 1, the district court would be required to reconsider its conclusion about whether a violation of that provision is a violent felony, in light of the recent case law discussed above.

We therefore remand the case for the district court to determine whether Thomas was convicted under subdivision 1 and, if so, whether in light of *Pereira-Gomez*, *Thrower*, and *Stokeling*, New York Penal Law § 130.65(1) qualifies as a violent felony under the ACCA, and for resentencing in light of its conclusions on these points.

For the foregoing reasons, we find no error with regard to Thomas's conviction, but VACATE the judgment of the district court and REMAND for resentencing.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[3] U.S.S.G. § 2K2.1, in contrast, mandates an increase in the base offense level where even one prior felony conviction is a crime of violence.