22-2100-cr
*United States v. Saint Clair*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of February, two thousand twenty-four.

PRESENT:
>ROBERT D. SACK,
>REENA RAGGI,
>JOSEPH F. BIANCO,
>>*Circuit Judges.*

---

UNITED STATES OF AMERICA,

>*Appellee,*

v.                                                                          22-2100-cr

ASA SAINT CLAIR, a/k/a SEALED
DEFENDANT 1,

>*Defendant-Appellant.*

---

FOR APPELLEE:                      EMILY DEININGER, Assistant United States Attorney (Olga I. Zverovich, Assistant United States Attorney, *on the brief*), *for* Damian Williams, United States Attorney for the Southern District of New York, New York, New York.

FOR DEFENDANT-APPELLANT:     JONATHAN ROSENBERG, Rosenberg Law Firm, Brooklyn, New York.

Appeal from a judgment of the United States District Court for the Southern District of New York (P. Kevin Castel, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment, entered on September 16, 2022, is **AFFIRMED**.

Defendant-Appellant Asa Saint Clair appeals from a judgment of conviction entered after a jury trial at which he was found guilty of wire fraud, in violation of 18 U.S.C. § 1343, for his participation in a scheme to defraud investors in World Sports Alliance ("WSA"). Saint Clair was sentenced principally to forty-two months' imprisonment, followed by three years' supervised release. On appeal, Saint Clair challenges: (1) the district court's denial of his motion to suppress evidence obtained as a result of a September 2019 search warrant; (2) the sufficiency of the evidence adduced at trial; and (3) the admission of prior acts evidence. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, which we reference only as necessary to explain our decision to affirm.

### I. Motion to Suppress

On September 25, 2019, a federal magistrate judge issued a warrant to search Apartment 43B at 845 United Nations Plaza in Manhattan (the "Subject Premises") for evidence of securities fraud, money laundering, and obstruction of justice (the "Subject Offenses").[1] The affidavit supporting the warrant application alleged that WSA had participated in two market-manipulation schemes in 2013 and 2014, and that it had produced potentially fraudulent agreements in response

---

[1] The government obtained this warrant in connection with a separate investigation into WSA. In February 2020, the government obtained a second search warrant permitting it to search the electronic devices seized from the Subject Premises for evidence of the instant wire fraud offense.

to a 2018 grand jury subpoena seeking documents related to these schemes. It also stated that the Subject Premises served as both WSA's office and Saint Clair's residence. Before trial, Saint Clair moved to suppress evidence recovered pursuant to the warrant, arguing that the information supporting probable cause was stale by the time the warrant was issued. The district court denied his motion. Saint Clair now challenges the district court's denial of his motion to suppress on staleness grounds, and additionally argues that the warrant lacked particularity and was overbroad. "On appeal from a district court's ruling on a motion to suppress evidence, we review legal conclusions de novo and findings of fact for clear error." *United States v. Ganias*, 824 F.3d 199, 208 (2d Cir. 2016) (en banc) (internal quotation marks and citation omitted).

"In evaluating probable cause in any given case, a judge must 'make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Raymonda*, 780 F.3d 105, 113 (2d Cir. 2015) (alteration adopted) (quoting *Illinois v. Gates*, 462 U.S. 213, 232 (1983)). We "generally accord[] substantial deference to the finding of an issuing judicial officer that probable cause exists." *Id*. (internal quotation marks and citations omitted). However, "we may conclude that a warrant lacks probable cause where the evidence supporting it is not sufficiently close in time to the issuance of the warrant that probable cause can be said to exist *as of the time of the search*—that is, where the facts supporting criminal activity have grown stale by the time that the warrant issues." *Id.* at 114 (internal quotation marks and citations omitted); *see also Rivera v. United States*, 928 F.2d 592, 602 (2d Cir. 1991) ("In determining whether probable cause exists, the magistrate [judge] is required to assess whether the information adduced in the application appears to be current, *i.e.*, true at the time of the application,

3

or whether instead it has become stale.").   There is "no bright-line rule for staleness," *Walczyk v. Rio*, 496 F.3d 139, 162 (2d Cir. 2007), and "the passage of time is not controlling and is but one factor to be considered, along with the kind of property sought and the nature of the criminal activity," *United States v. Singh*, 390 F.3d 168, 181 (2d Cir. 2004).

Saint Clair contends that, because "the warrant application was based on concerns that securities fraud had allegedly occurred in 2013 and 2014" and "[t]he related obstruction of justice charge was based on conduct occurring approximately one year prior to the warrant," the warrant was based on stale information and thus lacked probable cause.   Appellant's Br. at 31.   We disagree.

As Saint Clair acknowledges, the supporting affidavit alleged that WSA committed one of the Subject Offenses—obstruction of justice—in approximately 2018.[2]   Moreover, while the market-manipulation schemes underlying the other Subject Offenses occurred in 2013 and 2014, the affidavit included specific facts suggesting that WSA continued to maintain documents related to the schemes at the Subject Premises at the time of the search in September 2019.  *See Singh*, 390 F.3d at 182 ("The affidavit established probable cause to believe that [defendant] continued to maintain business records evidencing fraud at his residence during the more than twenty months that elapsed between the last known occurrence of the facts relied on and the issuance of the warrant.").   For instance, the affidavit stated that WSA, operating out of the Subject Premises,

---

[2]   The affidavit does not specify when WSA produced the allegedly fraudulent documents to the government.   It does state, however, that the government served WSA with the grand jury subpoena "[o]n or about February 12, 2018" and requested information from a foreign government, which ultimately contradicted the documents produced by WSA, "[i]n or about 2019."   Supp. App'x at 10–11. Accordingly, it appears that WSA committed the alleged obstruction of justice offense (*i.e.*, produced fraudulent documents) around 2018.

4

had produced documents related to the schemes in response to the grand jury subpoena, thus indicating that it maintained such records at least into 2018. The affidavit additionally confirmed, based on WSA's website and interviews with a building employee, that WSA continued to operate out of the Subject Premises as of the date of the warrant application. It also described WSA's use of email communications in furtherance of the schemes, and explained that, "where computers are used in furtherance of criminal activity, evidence of the criminal activity can often be found months or even years after it occurred." Supp. App'x at 12; *see also United States v. Jakobetz*, 955 F.2d 786, 804 (2d Cir. 1992) (concluding that warrants to search defendant's residence and vehicles were not based on stale information because they "sought to discover items that [defendant] could reasonably be expected to retain"). Thus, because the affidavit established "a fair probability that . . . evidence of [the Subject Offenses would] be found" at the time of the search, the warrant was not based on stale information and was supported by probable cause. *Raymonda*, 780 F.3d at 113 (internal quotation marks and citation omitted).

Additionally, Saint Clair argues for the first time on appeal that the warrant lacked particularity and was overbroad. "It is well-settled that the failure to assert a *particular ground* in a pre-trial suppression motion operates as a waiver of the right to challenge the subsequent admission of evidence on that ground [and that] [t]his oversight will be excused only for good cause." *United States v. Klump*, 536 F.3d 113, 120 (2d Cir. 2008) (emphasis added and alterations adopted) (internal quotation marks and citations omitted). In any event, even on the merits, Saint Clair's particularity and overbreadth arguments are unpersuasive.

Saint Clair argues that the warrant "failed to specify the items to be seized by their relation to the designated crimes." Appellant's Br. at 35; *see also United States v. Ulbricht*, 858 F.3d 71,

5

99 (2d Cir. 2017), *abrogated on other grounds by Carpenter v. United States*, 585 U.S. ___, 138 S. Ct. 2206 (2017) (summarizing the particularity requirement). In particular, he asserts that the warrant provision authorizing the seizure of "[e]vidence concerning the identity or location of, and communications with, employees of WSA, co-conspirators in the Subject Offenses, [and] foreign government officials," Supp. App'x at 20, was "ambiguous and could easily be interpreted to allow the search and seizure of all communications of WSA employees, without limitation," Appellant's Br. at 35. Saint Clair contends that the warrant should have limited the scope by defining "co-conspirators" and "government officials" and imposing a time limit on the items subject to seizure. "But the particularity requirement is not so exacting," *United States v. Riley*, 906 F.2d 841, 845 (2d Cir. 1990), and "a search warrant does not necessarily lack particularity simply because it is broad," *Ulbricht*, 858 F.3d at 100. A warrant need only be "sufficiently specific to permit the rational exercise of judgment by the executing officers in selecting what items to seize." *United States v. Shi Yan Liu*, 239 F.3d 138, 140 (2d Cir. 2000) (alteration adopted) (internal quotation marks and citation omitted). The warrant here identified the Subject Offenses and described the categories of evidence of those offenses authorized for seizure; it was therefore sufficiently particular and "the Fourth Amendment [was] not violated [merely] because the officers executing the warrant [may have had to] exercise some minimal judgment" in determining the items to seize. *Riley*, 906 F.2d at 845. At oral argument, government counsel conceded that it would have been better practice to include a temporal limitation in the warrant. *See In re 650 Fifth Avenue & Related Props.*, 934 F.3d 147, 163 (2d Cir. 2019) (concluding that warrant was not particularized in part because it lacked "temporal scope for the items to be seized"). We need not pursue the point, however, because we conclude, in any event, that the officers executing the warrant

reasonably relied on the magistrate judge's issuance of the warrant consistent with the good-faith exception to the exclusionary rule. *See United States v. Purcell*, 967 F.3d 159, 179–80, 183–84 (2d Cir. 2020) (citing *United States v. Leon*, 468 U.S. 897 (1984) in declining to suppress search of electronic records on particularity grounds in light of officers' good-faith reliance on warrant).

Saint Clair also asserts that the warrant was overbroad because it authorized the seizure of his personal records and devices, even though the warrant application "lacked any allegation that [he] had ever engaged in any wrongdoing." Appellant's Br. at 39. To be sure, a "description of the objects to be seized is defective if it is broader than can be justified by the probable cause upon which the warrant is based." *United States v. Galpin*, 720 F.3d 436, 446 (2d Cir. 2013) (internal quotation marks and citation omitted). However, the fact that certain items seized from the Subject Premises belonged to Saint Clair personally does not mean that their seizure was not supported by probable cause. *See, e.g.*, *Ganek v. Leibowitz*, 874 F.3d 73, 82 (2d Cir. 2017) (explaining that probable cause to search a place "is not to be confused with probable cause to think that the person whose premises are to be searched is implicated in the crime."); *United States v. Martin*, 426 F.3d 83, 86 (2d Cir. 2005) ("[O]nce it is established that probable cause exists to believe a federal crime has been committed a warrant may issue for the search of *any* property which the magistrate has probable cause to believe may be the place of concealment of evidence of the crime." (internal quotation marks and citation omitted)). Moreover, despite Saint Clair's assertion to the contrary, the warrant application alleged facts indicating that Saint Clair was involved in at least the obstruction of justice offense. Because there was probable cause to search the Subject Premises and to believe that any records and devices therein may contain evidence of the criminal activity that was the subject of the search, the warrant was not overbroad in

authorizing the seizure of such items belonging to Saint Clair that were located in the Subject Premises.

## II.      Sufficiency of the Evidence

Saint Clair challenges the sufficiency of evidence adduced at trial, arguing that the government failed to prove a scheme to defraud.   We review a challenge to the sufficiency of the evidence *de novo*.   *United States v. Requena*, 980 F.3d 30, 43 (2d Cir. 2020).   A defendant who makes such a challenge "bears a heavy burden."   *United States v. Connolly*, 24 F.4th 821, 832 (2d Cir. 2022).   In reviewing whether a conviction is supported by sufficient evidence, "we are required to draw all permissible inferences in favor of the government and resolve all issues of credibility in favor of the jury's verdict."   *United States v. Willis*, 14 F.4th 170, 181 (2d Cir. 2021). We must affirm the conviction "if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."   *United States v. Silver*, 864 F.3d 102, 113 (2d Cir. 2017) (internal quotation marks and citation omitted).

The essential elements of the crime of wire fraud are:   "(1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) use of the . . . wires to further the scheme."   *United States v. Greenberg*, 835 F.3d 295, 305 (2d Cir. 2016) (internal quotation marks and citations omitted).   "In order to prove the existence of a scheme to defraud, the government must also prove that the misrepresentations were material and that the defendant acted with fraudulent intent." *United States v. Weaver*, 860 F.3d 90, 94 (2d Cir. 2017) (per curiam) (internal quotation marks and citations omitted).   "Intent may be proven through circumstantial evidence, including by showing that defendant made misrepresentations to the victim(s) with knowledge that the statements were false."   *United States v. Guadagna*, 183 F.3d 122, 129 (2d Cir. 1999).

8

After reviewing the trial record, we find Saint Clair's challenge to the sufficiency of the evidence unpersuasive.   Drawing all permissible inferences and resolving all credibility issues in favor of the government, the evidence at trial established that Saint Clair knowingly made false or misleading statements regarding WSA's relationship with the United Nations ("UN") to induce investors to provide funds for the development of IGObit, a cryptocurrency developed by WSA. Several investors testified at trial that Saint Clair's representations regarding WSA's relationship with the UN were material to their decision to invest in IGObit.   For example, Kyle Zukowski testified that Saint Clair told him WSA was "affiliated" with the UN, and that their "affiliation was important" to his (Zukowski's) decision to invest in IGObit.   Supp. App'x at 241, 243; *see also id.* at 364, 366 (Tamara Lowrimore, an investor in IGObit, testifying that Saint Clair told her he was "affiliated" with the UN and that she thought this "made it sound like [WSA] was a really important company").   John Mitchell likewise testified that, based on his review of the WSA website and IGObit marketing materials,[3] he understood WSA and the UN to be "affiliated in some way" or "partners in some capacity," and that this relationship influenced his decision to invest in IGObit.   *Id.* at 302–03.

Evidence in the trial record further shows that Saint Clair knew that these representations were false.   Indeed, on cross-examination, Saint Clair acknowledged that it "would have been an untrue statement to say we had an affiliation with the United Nations."   Supp. App'x at 478; *see also id.* at 475 (Saint Clair testifying that, when he joined WSA in 2016, part of his job was to "[r]eestablish" WSA's relationship with the UN).   The government also introduced a WhatsApp

---

[3]   The evidence at trial showed that Saint Clair was responsible for the information on the IGObit and WSA websites and preparing marketing materials such as the IGObit whitepaper.

9

message that Saint Clair sent to the president of WSA in April 2018, stating that they "lost more IGObit sales . . . due to lack of UN affiliation." Supp. App'x at 130. Based on this evidence, a rational jury could find that Saint Clair made material misrepresentations to the IGObit investors regarding WSA's affiliation with the UN, and that Saint Clair knew that the statements were false.

On appeal, Saint Clair ignores this evidence in the record, arguing that the government improperly relied on his failure to repay the IGObit investors to prove fraudulent intent, because it could not prove the falsity of his representations regarding WSA's relationship with the UN. Saint Clair contends that certain evidence in the record, including the testimony of two UN employees and a cease-and-desist letter from the UN to WSA, did not conclusively show that his statements regarding WSA's relationship with the UN were false. However, even if this evidence *could* give rise to competing inferences, "we are required to draw all permissible inferences in favor of the government," *Willis*, 14 F.4th at 181, and, as we concluded above, sufficient other evidence in the record permitted the jury to rationally find that Saint Clair's statements were false. Moreover, the evidence at trial was sufficient to support Saint Clair's conviction, regardless of whether the investors were repaid or whether Saint Clair attempted to make IGObit succeed. *See United States v. Ferguson*, 676 F.3d 260, 280 (2d Cir. 2011) (upholding instruction to jury that "[n]o amount of honest belief on the part of a defendant that the scheme will ultimately make a profit for the investors, or not cause anyone harm, will excuse fraudulent actions or false representations by him or her" (internal quotation marks and record citation omitted)). Accordingly, there is no basis to disturb the jury's verdict based on the sufficiency of the evidence.

### III.	Prior Acts Evidence

The government introduced at trial the testimony of two witnesses—Georgianna Daniels and Mei Hwang—who had previously invested in Saint Clair's businesses and were never repaid. Prior to trial, the district court ruled this evidence could be admitted for the purpose of showing Saint Clair's intent or absence of mistake under Federal Rule of Evidence 404(b). On appeal, Saint Clair challenges the admission of this evidence, arguing that the described prior acts were not sufficiently similar to the conduct at issue and were unduly prejudicial. We disagree.

We review a district court's decision to admit evidence for abuse of discretion. *See United States v. Skelos*, 988 F.3d 645, 662 (2d Cir. 2021). We will reverse such a ruling only when it is "manifestly erroneous" or "arbitrary and irrational." *United States v. Dawkins*, 999 F.3d 767, 788 (2d Cir. 2021) (internal quotation marks and citations omitted). Although Rule 404(b) prohibits the admission of evidence of "any other crime, wrong, or act" to prove a defendant's character or criminal propensity, it permits the admission of such evidence to show, *inter alia*, a defendant's intent, knowledge, or absence of mistake. Fed. R. Evid. 404(b)(1), (2); *accord United States v. Dupree*, 870 F.3d 62, 76 (2d Cir. 2017). Thus, under this Circuit's "inclusionary approach," prior act evidence offered for any proper purpose is admissible so long as it is relevant to an issue at trial and the probative value of the evidence is not substantially outweighed by the risk of unfair prejudice. *United States v. Garcia*, 291 F.3d 127, 136 (2d Cir. 2002) (internal quotation marks and citation omitted); *see also* Fed. R. Evid. 403. To be relevant to the issue of knowledge or intent, prior act evidence "must be sufficiently similar to the conduct at issue to permit the jury to draw a reasonable inference of knowledge or intent from the other act." *United States v. Cadet*, 664 F.3d 27, 32 (2d Cir. 2011) (internal quotation marks and citation omitted). That said,

"[e]vidence of other acts need not be identical to the charged conduct to show knowledge or intent pursuant to Rule 404(b), so long as the evidence is relevant in that it provides a reasonable basis for inferring knowledge or intent." *Id.* at 32–33.

Saint Clair argues that the evidence offered through Daniels and Hwang was irrelevant, because they did not testify "that they were defrauded by the defendant," "that the original purpose of the investment was improper," or "that the defendant or anyone working on his behalf had made misleading statements to get them to invest." Appellant's Br. at 55. However, this argument ignores the similarities between the prior acts and the charged conduct, and the reasonable inferences that could be drawn with respect to Saint Clair's intent. For example, both Daniels and Hwang testified that they invested in Saint Clair's companies pursuant to promissory notes, which entitled them to monthly payments and equity shares once the companies went public. They further testified that, after Saint Clair failed to repay the loans, he promised that they would receive the payments owed after he completed other deals he claimed were pending in Dubai and elsewhere. Saint Clair provided the IGObit investors with similar promissory notes and, after failing to repay the loans, promised the IGObit investors that they would receive the payments after he completed other deals he claimed were pending in Dubai and Morocco. Given these similarities, Daniels's and Huang's testimony was probative on the issue of whether Saint Clair intended to repay the IGObit investors or whether his failure to do so was an innocent mistake. *See United States v. Zackson*, 12 F.3d 1178, 1182 (2d Cir. 1993) ("Where a defendant claims that his conduct has an innocent explanation, prior act evidence is generally admissible to prove that the defendant acted with the state of mind necessary to commit the offense charged."). Thus, the district court did not abuse its discretion by admitting the testimony under Rule 404(b).

12

We similarly find no abuse of discretion by the district court in its Rule 403 balancing. The Rule 404(b) evidence did not involve conduct more inflammatory than the charged crime, *see United States v. Livoti*, 196 F.3d 322, 326 (2d Cir. 1999), and any potential prejudice was minimized by the district court's repeated instructions to the jury emphasizing the proper purpose for which this evidence could be considered, *see United States v. Paulino*, 445 F.3d 211, 223 (2d Cir. 2006). Therefore, Saint Clair's challenge to the admission of the Rule 404(b) evidence is without merit.

\*                    \*                    \*

We have considered Saint Clair's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

13