**Dennis G. MORANI, Plaintiff, Appellant,**

v.

**William LANDENBERGER and Commonwealth Equity Services, Inc., Defendants, Appellees.**

**No. 99–1010.**

United States Court of Appeals, First Circuit.

Submitted June 21, 1999.

Decided Nov. 2, 1999.

---

Dennis G. Morani on brief pro se.

Thomas G. Nicholson and Finneran & Nicholson, P.C. on brief for appellees.

Before SELYA, BOUDIN and LYNCH, Circuit Judges.

BOUDIN, Circuit Judge.

This appeal arises out of a troubling dispute between appellant Dennis Morani and his former financial advisor, appellee William Landenberger.

Morani alleges that, during and subsequent to his recovery from a motor vehicle accident that left Morani brain damaged, Landenberger fraudulently advised him and his wife to accept an inadequate lump sum settlement from their disability insurer and to invest the money through Landenberger and the brokerage company he represented, appellee Commonwealth Equity Services, Inc. ("Commonwealth"). Landenberger then allegedly recommended and executed inappropriate investments, "churned" the account by making frequent trades so as to maximize his commissions, and failed adequately to disclose commission rates and other investment details to the Moranis.

After learning of Landenberger's alleged misconduct, Morani filed a *pro se* complaint in the federal district court in Massachusetts. He alleged that Landenberger and Commonwealth had violated various federal securities laws—based on Landenberger's advice regarding the insurance settlement, the inappropriate investments and churning, and the lack of disclosure. However, when they first opened their investment account, the Moranis had, along with Landenberger, signed a "Pre–Dispute Arbitration Agreement." The agreement provided that

> [the parties] agree that all controversies that may arise between us concerning any order transaction, or the continuation, performance, or breach of this or any other agreement between us, whether entered into before, on, or after the date of this account is opened, shall be determined by arbitration before a panel of independent arbitrators....

The agreement warned, *inter alia,* that "[a]rbitration is final and binding on the parties" and that "[t]he parties are waiving their right to seek remedies in court, including the right to jury trial."

After filing the *pro se* complaint, Morani retained counsel and, in October 1997, filed a "Uniform Submission Agreement"—thus submitting certain claims against Landenberger and Commonwealth to an arbitration panel sponsored by the National Association of Securities Dealers and agreeing to "abide by" any resulting arbitration award. Morani's "Statement of Claim" echoed the allegations in the *pro se* complaint regarding churning and the inadequate insurance settlement. The Moranis sought compensatory damages of $360,000 ($335,000 based on the inadequate insurance settlement and $25,000 based on churning) plus punitive damages.

Landenberger and Commonwealth then moved to dismiss Morani's complaint in the district court for failure to state a claim or, in the alternative, to stay the district court action pending the outcome of arbitration, arguing that relief could not be granted in the district court because all of Morani's claims were covered by a valid arbitration agreement. By endorsement, the district court stayed the case pending arbitration. At that point, Morani had already initiated arbitration proceedings in the manner described above.[1] 9 U.S.C. § 3.

The arbitration hearing, at which Morani was represented by counsel, took place over five days in July and August 1998, and resulted in a $10,000 award, issued on October 1, 1998. The three-member arbitration panel did not make any findings of fact or otherwise explain the basis for the award; indeed, the arbitration agreement provides that "[t]he arbitrators' award is not required to include factual or legal reasoning." Unsatisfied with the outcome, Morani returned *pro se* to district court, moved to vacate the arbitration decision and requested a hearing or trial on his original complaint. Appellees opposed Morani's motions and apparently revived their own motion to dismiss.

On November 20, 1998, after a hearing, the district court denied the motion to vacate and, treating the motion to dismiss as a motion for summary judgment, Fed. R.Civ.P. 12(b), 56, granted summary judgment for the appellees, stressing in a written opinion that Morani had voluntarily submitted his claims to arbitration by filing the Uniform Submission Agreement and Statement of Claim and that "[t]his Court must hold the plaintiff to that voluntarily-entered-into agreement." Morani filed a timely notice of appeal to this court.

■ Arbitration awards are subject only to limited review. We will vacate an award only on the narrow grounds specified by the Federal Arbitration Act, 9 U.S.C. § 10, or in other extreme situations including "instances where it is clear from the record that the arbitrator recognized the applicable law—and then ignored it." *Advest, Inc. v. McCarthy*, 914 F.2d 6, 9 (1st Cir.1990).

■ Morani's principal contention is that the arbitration award should be set aside because he was not able to question Landenberger before the arbitration panel. What appears to have happened is this: after presenting testimony from several witnesses, but not Landenberger, Morani's lawyer indicated that he was prepared to rest his case. The lawyer apparently expected, based on witness lists prepared by the appellees' counsel, that Landenberger would testify on his own behalf and would thus be subject to cross-examination. In fact, the appellees did not call Landenberger, and Morani apparently was not permitted to reopen his case in order to question him.

Because arbitration proceedings do not necessarily follow typical courtroom procedure, there may be cases in which unexpected application of strict procedural rules could rise to the level of "misconduct . . . in refusing to hear evidence pertinent

---

1. Although Morani could have argued that the dispute regarding the insurance settlement was not covered by the arbitration agreement, neither side has contested arbitrability on that basis and any such argument has now been waived.

and material to the controversy," one ground for vacatur under 9 U.S.C. § 10(a)(3). *See, e.g., Harvey Aluminum (Inc.) v. United Steelworkers of America,* 263 F.Supp. 488, 491–94 (C.D.Cal.1967). But Morani's lawyer surely should have realized that, after presenting witness testimony for several days and then resting his case, he might not be able to introduce additional non-rebuttal testimony.

■ Morani's other main argument is that he did not understand the original arbitration agreement that he signed on opening the account and that it was induced by fraud.[2] This may not be a frivolous argument in light of Morani's brain damage, *see generally Krasner v. Berk,* 366 Mass. 464, 319 N.E.2d 897, 898–900 (Mass.1974), and perhaps it could have been used to counter a motion to compel arbitration, *see Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 403–04, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). But Morani can hardly disavow the agreement at this late stage after invoking it himself and proceeding to arbitration with the assistance of counsel.

■ There is one problem remaining. Morani says some of the claims raised in his *pro se* complaint were not subject to dismissal or summary judgment because they were not in fact arbitrated. Morani's brief in this court then describes the issues he now wants to pursue, and some of them are issues that clearly were arbitrated. This is apparent after comparing his brief with the arbitrators' own written statement, at the close of the arbitration, as to the issues actually arbitrated.

Nevertheless, Morani's premise is likely correct in part. His district court complaint arguably covers four different claims, and available evidence suggests that he probably submitted only two of those claims in the arbitration proceeding. Specifically, the complaint makes the following allegations against Landenberger: (1) fraudulent advice regarding the insurance settlement; (2) excessive and inappropriate trading (churning); (3) failure to provide prospectuses and forgery of prospectus receipts; and (4) failure to disclose commission rates and other fees. Based on Morani's statement of claim and the arbitrators' decision, Morani appears to have submitted only the first two claims to arbitration.

There are two problems with this argument for Morani. The first is that very little of this was made clear to the district court. Morani did not make this argument either in his written opposition to the renewed motion to dismiss nor in his lengthy oral presentation at the hearing; Morani's wife, who also spoke at the hearing, did refer very briefly to forgery of prospectus receipts as an issue not resolved by arbitration; but when the district judge said (mistakenly) that this was a new claim not raised in the original complaint, neither of the Moranis corrected the district judge.

We are not going to rely on this failure adequately to preserve the issue, because counsel for the appellees explicitly told the district judge that *all* claims pressed in Morani's complaint had been submitted to arbitration; defense counsel twice repeats that statement in his appellate brief. This appears, as we have just explained, to be an inaccurate statement.[3] And it is a rea-

2. Morani also cites a case suggesting that churning claims are not subject to arbitration, but that case has been overruled and it is now clear that arbitration agreements covering claimed violations of the securities laws are generally enforceable, *see Rodriguez de Quijas v. Shearson/American Exp., Inc.,* 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989); *Shearson/American Exp., Inc. v. McMahon,* 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987); *see generally* 9 U.S.C. § 2.

3. Because we have no transcript of the arbitration proceeding, we cannot be certain that evidence as to the prospectuses and commissions was never presented to the arbitrators. However, the fact that these claims were not explicitly included in either Morani's statement of claim or in the arbitrators' description of issues they had considered suggests that the arbitration proceeding was narrower than the district court complaint.

sonable guess that in considering the motion to dismiss the district court wrongly assumed that the arbitration proceeding did encompass all of the claims set forth in Morani's district court complaint.

However, Morani faces a second difficulty. Those claims in Morani's complaint that he chose not to submit to arbitration were nevertheless arbitrable under the agreement, or at least he does not give us any reason to think otherwise. In effect what Morani is saying is that when the district judge stayed the proceeding pending arbitration, Morani was entitled to submit some of his claims to the arbitrators, withhold others, and say nothing to the judge about this reservation until after the arbitrators had acted and the case had returned to court. It seems to us that Morani is not entitled to a second bite at the apple without some adequate explanation for withholding claims that were arbitrable but were apparently not submitted.

It is hard to find any direct precedent on this issue: if arbitration is welcomed, the complaining party is usually anxious to submit all of its arguably arbitrable claims to arbitration; conversely, if arbitration is disputed, normally an order issues directing arbitration of arbitrable claims. *E.g., Sevinor v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 807 F.2d 16 (1st Cir.1986). Here, the district court simply endorsed a stay pending arbitration since the parties were by then agreed that arbitration should occur; but surely the court intended that whatever claims in the complaint were arbitrable should be submitted to the arbitrators at the same time. No other reading of the stay makes sense.

We might feel differently about this point if Morani were being disadvantaged on a technical issue for lack of counsel. *Cf. Ahmed v. Rosenblatt,* 118 F.3d 886, 890 (1st Cir.1997), *cert. denied,* 522 U.S. 1148, 118 S.Ct. 1165, 140 L.Ed.2d 176 (1998). But here, Morani did have counsel when determining what to submit to arbitration and in conducting the arbitration proceeding. It was his counsel's job, which may

well have been performed quite properly, to select for arbitration those claims that provided some prospect of success. In any event, to the extent Morani failed to present some claims to arbitration that were set forth in the complaint and were arbitrable under his agreement, this was a counseled decision.

We add that the district judge made every effort to give Morani a fair opportunity to be heard, and the judge did all he could to untangle a morass of allegations. The judge heard not only from Morani and his wife but also from a non-lawyer advocate whom Morani brought to court, and the judge pressed both sides in an effort to develop information that neither side had explained adequately.

The judgment of the district court is *affirmed.* Each side will bear its own costs on the appeal.

*It is so ordered.*