11-4574-cr
*United States v. Graham*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

# SUMMARY ORDER

Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 10th day of December, two thousand and twelve.

PRESENT:

> JOSÉ A. CABRANES,
> REENA RAGGI,
> SUSAN L. CARNEY,
>
> *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

*Appellee,*

v.                                                                     No. 11-4574-cr

OMARI GRAHAM,

*Defendant-Appellant.*

_____

**FOR DEFENDANT-APPELLANT:**          WILLIAM T. EASTON, Easton, Thompson, Kasperek, Shiffrin, LLP, Rochester, NY.

**FOR APPELLEE:**          MONICA J. RICHARDS (Assistant United States Attorney), *for* William J. Hochul Jr., United

States Attorney for the Western District of New York, Buffalo, NY.

Appeal from a judgment of conviction entered on October 27, 2011, by the United States District Court for the Western District of New York (David G. Larimer, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of conviction is **AFFIRMED**.

Defendant-appellant Graham ("defendant" or "Graham") appeals from a judgment of conviction entered against him on one count of being a felon in possession of a semi-automatic handgun and seven rounds of ammunition, in violation of 18 U.S.C. § 922(g)(1). We assume the parties' familiarity with the facts and procedural history of this case, to which we refer only as necessary to explain our decision to affirm.

On appeal, Graham asserts that the District Court erred in admitting evidence of canine tracking under *Daubert v. Merrell Dow Pharmaceutical, Inc.*, 509 U.S. 579 (1993) and its progeny. Graham also argues that the District Court erred in admitting evidence that police officers, on the night of Graham's arrest, were aware of robberies in the area by a person reportedly wearing a face mask.

### BACKGROUND

Around 2:30 a.m. on October 17, 2008, Deputy Sheriff Gary Wildman ("Wildman") of the Monroe County Sheriff's Office stopped a white four-door Honda Accord at the intersection of Chili Avenue and Bright Oaks Drive, in Chili, New York, for an equipment violation. Graham was a passenger, accompanied by a female driver. When the driver was unable to provide a valid form of identification, Wildman moved her to his police patrol to verify her license, while Graham remained in the Honda. While interviewing the driver in the patrol car, Wildman thrice ordered Graham, who had exited the Honda and paced some fifteen feet away, to reenter and remain in that vehicle. Wildman thereupon requested "backup" from his police dispatcher and was quickly joined by Sergeant Thomas Rowe ("Rowe"). Shortly after Rowe's arrival, Graham, still alone in the Honda, started that vehicle, accelerated quickly, and fled. Rowe pursued Graham by vehicle for approximately a mile and a half until Graham, unable to negotiate a turn at upwards of 100 mph, lost control and crashed the Honda into a telephone pole at the intersection of Chili Coldwater Road and Chestnut Ridge Road. Approaching the crash site, Rowe observed Graham jump out of his car, and run across a yard. At this point, Rowe broadcast "perimeter points" to other patrolling deputy sheriffs, including Deputy Sheriff John Auberger ("Auberger"), who observed Graham's flight and pursued him first in his patrol car and then on foot. Auberger heard the rattling of a chain link fence located behind a minivan, whereupon he found Graham behind the fence, in a private yard, attempting to hide in the dark. As Auberger then arrested the defendant, Graham said that "his life

2

was over." Auberger also searched Graham upon arrest and found a $10 dollar "dime bag" of marijuana on his person.

Among the officers who responded to Rowe's broadcast was Deputy Sheriff Andrew Belmont ("Belmont") of the K-9 unit. While law enforcement agents were still in pursuit of Graham, Belmont and his German Shepard partner "Czar" went to the crash site and began tracking the path of the defendant's flight. Belmont was notified that Graham had been apprehended during this process, but he asked the police units that had taken the defendant into custody not to move him from the site of arrest until the "tracking" had concluded. Czar followed a course of 150-200 yards over five minutes which came within several feet of the aforementioned minivan and ended at the site of arrest. Belmont then attempted to deploy Czar to detect nitrates and find any weapons that might have been discarded along the flight path. Czar checked the entire residential yard in which Graham was found and became fatigued, at which point Belmont requested canine replacements to finish the search. Officer Jeffrey Delgudico ("Delgudico") responded with his Belgian Malinois partner "Caesar." Accompanied by Belmont, Delgudico and Caesar continued the nitrate search for 10-15 minutes before recovering a black handgun underneath the minivan at approximately 4:15 a.m.

At trial, Wildman testified that earlier on the evening of Graham's arrest, he had learned that a white four-door Honda that was "possibly occupied by two black males," might have been used in a series of local armed robberies, and that a face mask was worn in at least one of the robberies. Wildman also testified that he had seen Graham's white Honda earlier that evening, around 10:30 p.m., and believed it was "occupied by two black males." The jury also heard evidence from Belmont describing the searches of the two police dogs. No fingerprints, or partial fingerprints, were found on the gun, magazine or ammunition, nor was any eyewitness testimony presented to prove that Graham carried a gun. The jury returned a guilty verdict on July 14, 2011.

## A.

On appeal, Graham argues that the testimony of Belmont regarding the canine searches of Czar and Caesar should not have been admitted, nor Wildman's testimony regarding other armed robberies and the use of a face mask by one or more suspects. Graham asserts that the admission of each type of testimony constituted reversible error. Generally, we review evidentiary rulings for abuse of discretion. *United States v. Cadet*, 664 F.3d 27, 32 (2d Cir. 2011). "To find such abuse, we must conclude that the trial judge's evidentiary rulings were arbitrary and irrational." *United States v. White*, 692 F.3d 235, 244 (2d Cir. 2012) (internal quotation marks omitted). Evidentiary rulings are also subject to harmless error analysis. Fed. R. Crim. P. 52(a); *Cadet*, 664 F.3d at 32. "An erroneous ruling on the admissibility of evidence is harmless if the appellate court can conclude with fair assurance that the evidence did not substantially influence the jury." *White*, 692 F.3d at 244 (internal quotation marks omitted).

**B.**

Graham asserts that the dog tracking evidence presented by Belmont at trial was unreliable and should have been held inadmissible by the District Court pursuant to Federal Rules of Evidence 702 and 403. With respect to the Rule 702, Graham discounts evidence of tracking by Czar and Caesar because of the manner in which the dogs signaled an "interest" in nitrate rather than a full "alert," and because of the prospect of handler bias.[1] Graham further argues that the lack of direct evidence of his possession of a firearm heightens the need for exclusion of the evidence absent scientific corroboration.

A district court has "broad discretion" with respect to the admission of expert testimony. *United States v. Dukagjini*, 326 F.3d 45, 51-52 (2d Cir. 2003). Accordingly, we will sustain a district court's admission of expert testimony unless there is a showing of manifest error. *See United States v. Farhane*, 634 F.3d 127, 158 (2d Cir. 2011). In this case, Magistrate Judge Marian Payson held a *Daubert* hearing on the issue of excluding expert testimony by the canine handlers and issued a thorough Report and Recommendation ("R&R"), which was adopted by the District Court in its entirety. Significantly, Magistrate Judge Payson reviewed the reliability of both canine olfactory senses in general, as well as the reliability of the two dogs specifically used to track Graham. Moreover, her inquiry took care to review canine reliability with respect to both human scent tracking and nitrate detection. We find no error, much less manifest error, in the admission of Belmont's expert testimony as a canine handler, and affirm the orders of the court in this regard, substantially for the reasons outlined in Magistrate Judge Payson's R&R.

In addition, we find no basis for Graham's argument on appeal that "the danger of unfair prejudice from the dog-sniff evidence was enormous, particularly given the nearly superstitious faith with which many regard dog-sniff evidence."[2] In sum, we find no error, much less "manifest error," under Federal Rule of Evidence 403, in the admission of the canine handler's testimony.

**C.**

Graham argues on appeal that testimony that police officers were aware of uncharged armed robberies, at least one of which was committed by a person using a face mask, and testimony that he possessed a ski mask upon arrest, should not have been admitted under Federal Rules of Evidence 403 and 404(b). At the time of Graham's trial, Rule 404(b) prohibited "[e]vidence of other crimes,

---

[1] Graham argues that police dogs are trained to "fully alert" to the presence of nitrates by lying down, but only signal an "interest" in nitrates when they display lesser cues such as agitation, a change of posture or tail-wagging.

[2] Even assuming some layman's undue faith in dog-sniff testimony, we note that Graham's counsel challenged that testimony at trial by, *inter alia*, questioning Belmont, and by arguing to the jury, that Czar had not fully "alerted" during the nitrate detection exercise even though the dog was in the vicinity of the minivan where the gun was eventually found.

wrongs or acts . . . to prove the character of a [defendant] in order to show action in conformity therewith." Generally, "[w]e have adopted an inclusionary approach to evaluating Rule 404(b) evidence, which allows evidence to be received at trial for any purpose other than to attempt to demonstrate the defendant's criminal propensity." *United States v. Edwards*, 342 F.3d 168, 176 (2d Cir. 2003) (internal quotations omitted). The District Court permitted the testimony at issue here in order to explain the actions of the officers the night of Graham's arrest. *See generally United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000) ("[E]vidence of uncharged criminal activity is not considered other crimes evidence under Fed. R. Evid. 404(b) if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." (internal quotation marks omitted)). The District Court here correctly found the admission of uncharged conduct permissible to explain Deputy Sheriff Wildman's action with respect to the white Honda, including his interest in stopping the vehicle, and his request for "backup."

Although a closer question, we also find that the District Court did not err or abuse its discretion in concluding that the probative value of Wildman's testimony outweighed its prejudicial effect under Rule 403. In reaching this conclusion, we note that the District Court gave numerous clear curative instructions to the jury, including during Wildman's testimony and in its final instructions. For example, the District Court instructed the jury prior to its deliberations that the "evidence was submitted for one purpose and one purpose only: [t]o explain the actions of the police that night. It was not admitted for, nor should you consider it as[,] evidence that this defendant was involved in those robberies."[3] While allowing Wildman to testify to the fact that he noticed a white Honda matching the general description of a vehicle involved in reported crimes may indeed have been "sufficient," as Graham suggests, we do not believe that the more specific description of the criminal activity here, when coupled with the District Court's limiting instructions, rises to the level of error. *See United States v. Abu–Jihaad*, 630 F.3d 102, 133 (2d Cir. 2010) (upholding a Rule 403 determination where the district court minimized the risk of unfair prejudice through limiting instructions); *United States v. Mercado*, 573 F.3d 138, 142 (2d Cir. 2009) (same). Accordingly, the District Court did not abuse its discretion in admitting law enforcement testimony about the uncharged robberies and the defendant's ski mask.

---

[3] In his closing statement, Graham's counsel also emphasized to the jury that the testimony about the robberies could only be used to explain the conduct of the police during the 2:30 a.m. stop and could not be used to show Graham's motive for possessing a weapon.

## CONCLUSION

We have considered all of Graham's arguments on appeal and find them to be without merit. Accordingly, for the reasons stated above, we **AFFIRM** the October 27, 2011 judgment of conviction.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk