23-7687-cr (L)
*United States v. Civitello*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 1st day of May, two thousand twenty-five.

PRESENT:
>     RICHARD C. WESLEY,
>     JOSEPH F. BIANCO,
>     WILLIAM J. NARDINI,
>         *Circuit Judges*.

_____

UNITED STATES OF AMERICA,

>     *Appellee*,

>     v.                                                          23-7687-cr (L);
>                                                                  24-7-cr (Con)

ROBERT J. INGRAO, AKA BOBBY,
CHRISTOPHER J. KELLY,
JEFFREY C. CIVITELLO, JR.,

>     *Defendants*,

JEFFREY C. CIVITELLO, SR., RICHARD SINDE,
AKA RICHIE,

>     *Defendants-Appellants*.*

_____

---

* The Clerk of the Court is respectfully directed to amend the caption on this Court's docket to be consistent with the caption on this order.

FOR APPELLEE:                                    Thomas R. Sutcliffe and Michael S. Barnett, Assistant United States Attorneys, *for* Carla B. Freedman, United States Attorney for the Northern District of New York, Syracuse, New York.

FOR DEFENDANTS-APPELLANTS:        ERIC M. GALARNEAU, Albany, New York, *for* Jeffrey Civitello, Sr.

ANDREW M. ST. LAURENT, Harris St. Laurent & Wechsler LLP, New York, New York, *for* Richard Sinde.

Appeal from two judgments of the United States District Court for the Northern District of New York (Mae A. D'Agostino, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgments of the district court, entered on November 2, 2023, and December 26, 2023, are **AFFIRMED**.

Defendants-Appellants Jeffrey Civitello, Sr. ("Civitello Sr.") and Richard Sinde ("Sinde") appeal from the district court's judgments of conviction. Appellants' convictions arose principally from a drug trafficking scheme in which Civitello Sr., Sinde, and their co-defendants conspired to transport—from Queens, New York, to Schenectady, New York—and sell nine kilograms of cocaine. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to affirm.

On May 24, 2022, a grand jury returned a second superseding indictment (the "indictment") against Civitello Sr. and Sinde, along with co-defendants Jeffrey Civitello, Jr. ("Civitello Jr.") and Robert Ingrao ("Ingrao"). More specifically, the indictment charged all four defendants with conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A) ("Count One"), and possession with

intent to distribute 500 grams or more of cocaine on March 31, 2021, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) and 18 U.S.C. § 2 ("Count Two"). The indictment further charged Sinde and Ingrao with possession with intent to distribute five kilograms or more of cocaine on April 2, 2021, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) and 18 U.S.C. § 2 ("Count Three"). Finally, the indictment charged Civitello Sr. and Civitello Jr. with attempted possession with intent to distribute five kilograms or more of cocaine on that same date, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A) ("Count Four").[1]

On April 26, 2023, after a joint jury trial, Civitello Sr. was convicted of Counts One, Two, and Four, and Sinde was convicted of Counts One, Two, and Three. The jury also found that the government had proven each of the applicable drug quantities. On July 18, 2023, the district court issued a Memorandum-Decision and Order which, *inter alia*, denied both Civitello Sr.'s motion for judgment of acquittal under Federal Rule of Criminal Procedure 29(c) and his motion for a new trial under Federal Rule of Criminal Procedure 33. The district court sentenced Civitello Sr. principally to 120 months' imprisonment, followed by five years' supervised release, and Sinde principally to 168 months' imprisonment, followed by five years' supervised release.[2]

On appeal, Civitello Sr. argues that the district court erred by: (1) denying him the ability to attend sidebar conferences during jury selection; (2) not striking Juror No. 85 for cause after the juror disclosed that he had a nephew struggling with a drug addiction and expressed favorable views of law enforcement; (3) admitting evidence, pursuant to Federal Rule of Evidence 404(b), that the government's cooperating witness and Appellants' co-defendant Christopher Kelly ("Kelly") previously sold Civitello Sr. marijuana and cocaine; (4) admitting jailhouse calls

---

[1] Ingrao pled guilty to Counts One and Three pursuant to a plea agreement with the government.

[2] Civitello Jr. was also convicted and sentenced, but did not appeal.

between Sinde and Ingrao for the jury to consider only as to those defendants; and (5) denying his motion for a new trial under Rule 33. Sinde argues that the district court erred by: (6) admitting certain testimony regarding an unrelated investigation into Civitello Jr. for drug-related conduct; (7) assigning three criminal history points to a 1994 conviction related to stolen credit cards; and (8) imposing a sentence that over-emphasized his criminal history and created unwarranted sentencing disparities.[3]

For the reasons set forth below, we find each of these arguments unpersuasive.

## I. Jury Selection Challenges

### A. Right to be Present at Sidebar

Civitello Sr. argues that the district court erred by excluding him from sidebar conferences during jury selection. In particular, he contends that one of the individuals eventually seated on the jury (Juror No. 143) discussed at sidebar whether her brother's past drug addiction would impact her ability to impartially consider the case, and by not being present, Civitello Sr. was unable to "share his thoughts about the juror's potential bias," which "would have altered the trajectory of the selection process." Civitello Sr. Br. at 14–15. As a result, Civitello Sr. argues that his conviction should be vacated, and the case should be remanded for a new trial. We disagree.

Because Civitello Sr. did not object at trial to being excluded from sidebar, we review his challenge for plain error.[4] *See United States v. Rivera*, 115 F.4th 141, 152 (2d Cir. 2024). For

---

[3] Pursuant to Federal Rule of Appellate Procedure 28(i), Civitello Sr. and Sinde also join and adopt each other's arguments, to the extent such arguments are applicable to their respective convictions.

[4] Although Civitello Sr. admits that he did not lodge a formal objection to, or otherwise seek to challenge, being excluded from sidebar, he argues that, under Federal Rule of Criminal Procedure 51(a), such an action was unnecessary to preserve his objection because the district court preemptively ruled that he could not attend them. Civitello Sr.'s argument misapplies Rule 51(a). We have explained that under Rule 51(a), "[w]here a defendant has made his position clear, further objections to rulings or orders of the court are unnecessary to preserve a claim of error for appellate review." *United States v. Rosemond*, 841 F.3d 95,

there to be plain error, a defendant must demonstrate: "(1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the [defendant]'s substantial rights; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Miller*, 954 F.3d 551, 557–58 (2d Cir. 2020).

It is well established that a criminal defendant has the constitutional right "to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings." *Faretta v. California*, 422 U.S. 806, 819 n.15 (1975). Federal Rule of Criminal Procedure 43 further provides, with some exceptions, that a defendant "must be present" at "every trial stage." Fed. R. Crim. P. 43(a). One of those critical stages of the trial is the impaneling of the jury. *See Tankleff v. Senkowski*, 135 F.3d 235, 246 (2d Cir. 1998); Fed. R. Crim. P. 43(a)(2). This right to be present, however, is not absolute. *See Cohen v. Senkowski*, 290 F.3d 485, 489 (2d Cir. 2002). For example, we have held that the defendant's right to be present applies to the "pre-screening" of jurors, where that screening involves a "substantive inquiry into the jurors' qualifications." *United States v. Allen*, 788 F.3d 61, 73 (2d Cir. 2015); *accord Cohen*, 290 F.3d at 489–90. By contrast, we have held the right does not apply to the "administrative" aspects of impaneling a jury, such as questioning jurors regarding logistical matters, namely, whether a juror would experience any personal hardship by serving on the jury. *Allen*, 788 F.3d at 73; *accord United States v. Greer*, 285 F.3d 158, 168 (2d Cir. 2002).

Here, as a threshold matter, the government contends that "Civitello Sr. waived his right to be present for the sidebar conferences" because "after the district court directed the defendants to not attend sidebar conferences," he did not object. Appellee Br. at 29; *see also Allen*, 788 F.3d at

---

106 (2d Cir. 2016) (internal quotation marks and citation omitted). However, Civitello Sr. does not identify any portion of the record where he made clear his position regarding his desire to be present at sidebar conferences during jury selection, and thus he was required to inform the district court of his objection in order to properly preserve his legal challenge. *See* Fed. R. Crim. P. 51(b); *Rosemond*, 841 F.3d at 106.

74–75 (explaining that a "[w]aiver must be knowing and voluntary, but it can be implied from the defendant's conduct" (alterations adopted) (internal quotation marks and citation omitted)). However, we need not decide this issue because, even assuming *arguendo* that Civitello Sr. did not waive his right to be present and that his exclusion from the sidebar conferences was clear error to the extent that a juror was asked substantive questions at such conferences, he has failed to demonstrate that the error affected his substantial rights. Therefore, we conclude that the plain error standard is not satisfied.

This Court has previously determined that a defendant's absence from sidebar conferences during *voir dire* did not warrant vacating a conviction where: (1) the defendant was present in the courtroom during jury selection; (2) most of the questions were answered by jurors in open court; (3) defense counsel participated in sidebars and the defendant had the opportunity to consult with his lawyer during those conferences; and (4) a small number of jurors who were questioned at the bench were selected to serve on the jury. *See United States v. Feliciano*, 223 F.3d 102, 112 (2d Cir. 2000); *accord Sanchez v. Duncan*, 282 F.3d 78, 82–83 (2d Cir. 2002). All four of these conditions are present here. Civitello Sr. was in the courtroom for the entirety of jury selection, most of *voir dire*—apart from a limited number of sidebar conferences—was conducted in open court, the district court gave defense counsel the opportunity to consult with Civitello Sr., and only one juror questioned at side bar without Civitello Sr. being present (Juror No. 143) was later seated on the jury (without any for-cause challenge from Civitello Sr.). Thus, because Civitello Sr. has failed to demonstrate that his absence from the sidebar conferences during jury selection affected his substantial rights, any error by the district court in excluding him does not warrant a new trial under plain error review. *See United States v. Lang*, 220 F. App'x 48, 51 (2d Cir. 2007) (summary

order) (finding harmless error where a juror was questioned outside defendant's presence, but with defense counsel present, assuming *arguendo* defendant had a constitutional right to be present).

## B. Juror No. 85

Civitello Sr. contends that the district court erred by denying his request to strike Juror No. 85 for cause on the grounds that the juror would not be impartial because he had a nephew who previously struggled with a drug addiction, and he expressed a favorable opinion of law enforcement. We find this argument unpersuasive.

"We review for abuse of discretion a district court's handling of juror dismissal, reversing only if there is clear abuse of the district court's discretion." *United States v. Mensah*, 110 F.4th 510, 524 (2d Cir. 2024) (alterations adopted) (internal quotation marks and citations omitted). Indeed, "there are few aspects of a jury trial where we would be less inclined to disturb a trial judge's exercise of discretion . . . than in ruling on challenges for cause in the empaneling of a jury." *United States v. Nelson*, 277 F.3d 164, 201–02 (2d Cir. 2002) (alteration adopted). "This is especially true when, as here, a for cause challenge to a juror's impartiality rests on a claim that the juror suffers from . . . actual bias, that is, the existence of a state of mind that leads to an inference that the person will not act with entire impartiality." *Id.* at 202 (internal quotation marks and citation omitted).

We conclude that the district court did not abuse its discretion in declining to strike Juror No. 85 for cause. The district court asked questions probing the juror's views to ascertain whether he "could decide [the] case objectively and impartially" in light of his nephew's drug addiction and his opinions concerning law enforcement, and the juror explicitly affirmed that he could. Joint App'x at 238. Moreover, after the juror acknowledged, in response to additional questions from defense counsel, that because of his nephew, he might be better suited to serve on a jury in a case

7

unrelated to drug issues, the district court again confirmed through additional *voir dire* that, notwithstanding those answers, he would be a fair and impartial juror. Based on his responses, the district court determined that the juror was "very forthright about what he was thinking," and credited the juror's statement that he could be objective and impartial. *Id.* at 253–54; *see also United States v. Murray*, 618 F.2d 892, 899 (2d Cir. 1980) (finding no abuse of discretion in seating a juror in a drug case, despite her having a nephew who used drugs and acknowledging that she could not guarantee that her feelings about drugs would not enter the case, because "[t]he crucial fact" was that she "stated in effect that she would do her best to determine the case on the evidence presented"). This careful questioning was sufficient for the district court, being in the best position to assess impartiality and credibility, to determine that Juror No. 85 could serve on the jury. *United States v. Nieves*, 58 F.4th 623, 631 (2d Cir. 2023) (explaining that district courts are "best positioned to reach conclusions as to impartiality and credibility [of jurors] by relying on [their] own evaluations of demeanor evidence and of responses to questions" (internal quotation marks and citation omitted)). Therefore, the district court did not abuse its discretion by declining to strike Juror No. 85 for cause.

## II.     Evidentiary Challenges

"[A] district court's decision to admit evidence is reviewed for abuse of discretion," *United States v. Ojudun*, 915 F.3d 875, 885 (2d Cir. 2019), unless there was no objection below, in which case we review evidentiary decisions for plain error, *United States v. Pierce*, 785 F.3d 832, 840 (2d Cir. 2015).[5]

---

[5] The parties dispute whether abuse of discretion or plain error review applies to the district court's evidentiary rulings. We need not resolve this disagreement here, however, because, as explained *infra*, Appellants' evidentiary challenges fail under either standard.

8

### A. Rule 404(b)

Civitello Sr. argues the district court erred in admitting, pursuant to Rule 404(b), testimony from Kelly that he previously sold cocaine and marijuana to Civitello Sr. in prior transactions unrelated to the conduct charged in this case. In particular, Civitello Sr. contends that this evidence should have been excluded on the grounds that: (1) it had little probative value because the transactions were old and unrelated to the current charges; and (2) any probative value was substantially outweighed by prejudice because Kelly's testimony provided no contextual details regarding the transactions, the testimony was inflammatory, and the transactions were too similar to the charged conduct. We find these arguments unavailing.

Although Rule 404(b) prohibits the admission of evidence of "any other crime, wrong, or act" to prove a defendant's character or criminal propensity, it permits the admission of such evidence to show, *inter alia*, a defendant's intent or knowledge. Fed. R. Evid. 404(b)(1), (2). Thus, under this Circuit's "inclusionary approach," prior act evidence is admissible so long as "the evidence is relevant to an issue at trial other than the defendant's character." *United States v. Garcia*, 291 F.3d 127, 136 (2d Cir. 2002) (internal quotation marks and citation omitted). To be relevant to the issue of knowledge or intent, prior act evidence "must be sufficiently similar to the conduct at issue to permit the jury to draw a reasonable inference of knowledge or intent from the other act." *United States v. Cadet*, 664 F.3d 27, 32 (2d Cir. 2011) (internal quotation marks and citation omitted).

Any relevant "other acts" evidence permissible under Rule 404(b) may still be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403; *Garcia*, 291 F.3d at 136. Evidence generally is not unfairly prejudicial when it "d[oes] not involve conduct more inflammatory than the charged crime." *United States v. Livoti*, 196 F.3d

9

322, 326 (2d Cir. 1999). Where a "district court has conscientiously balanced the proffered evidence's probative value with the risk for prejudice, its conclusion will be disturbed only if it is arbitrary or irrational." *United States v. Awadallah*, 436 F.3d 125, 131 (2d Cir. 2006).

Here, the district court did not abuse its discretion in admitting Kelly's testimony under Rule 404(b). The district court reasonably determined that Kelly's testimony was probative as to Civitello Sr.'s state of mind because the past drug dealings between Kelly and Civitello Sr. made it more likely that Civitello Sr. knowingly and intentionally participated in the charged drug conspiracy with Kelly, rather than as a result of some mistake or accident. *See United States v. Felder*, 993 F.3d 57, 78 (2d Cir. 2021) ("[T]his [C]ourt has upheld the admission of [] prior-crime evidence that rendered more plausible conspirators' intentional participation in the charged crime."); *United States v. Dupree*, 870 F.3d 62, 76 (2d Cir. 2017) (upholding admission of evidence of defendants' previous participation in drug trafficking operation "as probative evidence of defendants' knowledge of the charged drug-[related acts], [and] their intent to engage in these acts"). The probative value of this evidence is further supported by the fact that Kelly's testimony helped explain the relationship among the defendants and refuted defendants' own arguments that the government's theory of how the deal for nine kilograms of cocaine was struck was implausible. *See* Joint App'x at 1521–22; *see also United States v. Rosemond*, 958 F.3d 111, 125–26 (2d Cir. 2020) (upholding admission of evidence of previous drug transactions to explain "the mutual trust between [the defendant] and the other conspirators"); *Dupree*, 870 F.3d at 76 ("The district court can, for example, admit evidence of prior acts to inform the jury of the background of the conspiracy charged, in order to help explain how the [] relationship between participants in the crime developed, or to explain the mutual trust that existed between coconspirators." (internal quotation marks and citation omitted)). Moreover, we discern no basis to disturb the district court's

determination that, under Rule 403, the risk of prejudice in admitting this testimony was minimal because the previous drug transactions were no more inflammatory than the charged crime. *See Livoti*, 196 F.3d at 326. Thus, the district court did not abuse its discretion in admitting Kelly's testimony regarding prior drug transactions between him and Civitello Sr.

## B. Jailhouse Calls

Civitello Sr. also argues that the district court erred by admitting jailhouse calls between Sinde and Ingrao in early April 2021, even with a limiting instruction to the jury that the evidence could be considered only as to Sinde. Specifically, Civitello Sr. contends that that evidence was prejudicial to him because it could have led the jury to improperly infer, based on the calls, that Civitello Sr. was involved in the conspiracy. We are unpersuaded.

Pursuant to Federal Rule of Evidence 105, "[i]f the court admits evidence that is admissible against a party or for a purpose—but not against another party or for another purpose—the court, on timely request, must restrict the evidence to its proper scope and instruct the jury accordingly." Fed. R. Evid. 105. "Where allegedly prejudicial evidence is admitted solely against one defendant in a multi-defendant trial, the prejudice this might cause to his co-defendants is an appropriate consideration for Rule 403 balancing and may result in the exclusion of such evidence in the joint trial." *United States v. Gelzer*, 50 F.3d 1133, 1140 (2d Cir. 1995).

The district court did not abuse its discretion in admitting these jailhouse calls. As the district court properly found, the calls were probative because they helped establish a "close personal relationship" between Sinde and Ingrao and helped establish that these co-defendants participated in the conspiracy together. Joint App'x at 1221. Furthermore, consistent with Rule 105, the district court delivered a limiting instruction to the jury before the calls were introduced and again before jury deliberations. As for Civitello Sr.'s contention that the jury could have

11

inferred his participation in the conspiracy based on the relationship between Sinde and Ingrao, such an argument is too speculative and attenuated for any potential prejudice to outweigh the probative value of the calls, especially in light of the clear limiting instruction. *See United States v. Figueroa*, 618 F.2d 934, 946 (2d Cir. 1980) (explaining that the risk of prejudice if the jury were to "draw an adverse inference against . . . co-defendants because of their association with a defendant [against whom prejudicial evidence was admitted, but only as to that defendant] . . . seems too insubstantial in most circumstances to survive forceful instructions").

### C. Background Evidence

Sinde contends that the district court abused its discretion by admitting certain testimony regarding an unrelated investigation into Civitello Jr. for drug-related conduct because this testimony was irrelevant and unduly prejudicial. We disagree.

Relevant evidence is generally admissible. Fed. R. Evid. 402. Evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. "To be relevant, evidence need only tend to prove the government's case, and evidence that adds context and dimension to the government's proof of the charges can have that tendency." *United States v. Williams*, 585 F.3d 703, 707 (2d Cir. 2009). This includes background evidence, which can be admitted "to enable the jury to understand the complete story of the crimes charged." *United States v. Reifler*, 446 F.3d 65, 92 (2d Cir. 2006) (internal quotation marks and citation omitted). However, relevant evidence may be excluded if its "probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403.

We find no basis to disturb the district court's decision to admit the limited background testimony regarding the investigation of Civitello Jr. As to relevance, it was within the district

12

court's discretion to determine that the evidence provided important context for law enforcement's actions relative to the charged conduct and that, without this background information, jurors might have been confused about what was occurring in the case. *See Reifler*, 446 F.3d at 92. As we have explained, the Supreme Court has emphasized "the importance of allowing the prosecution to maintain 'the natural sequence of narrative evidence' in presenting its case, to ameliorate the concern that '[p]eople who hear a story interrupted by gaps of abstraction may be puzzled at the missing chapters.'"[6] *United States v. Al-Moayad*, 545 F.3d 139, 161 (2d Cir. 2008) (alteration in original) (quoting *Old Chief v. United States*, 519 U.S. 172, 189 (1997)). Accordingly, the district court reasonably determined that this background evidence was relevant.

Sinde alternatively contends that the background evidence was prejudicial because it "impl[ied] that the mere fact of the investigation supported a finding of guilt or that, for whatever reason, there was evidence of other drug transactions that were not put in front of the jury." Sinde Br. at 19. However, as the district court noted, it is unlikely that the limited background evidence would inflame or confuse the jury to such a degree that they would have convicted Sinde based upon Civitello Jr.'s unrelated drug activities. *See Awadallah*, 436 F.3d at 131 (explaining that

---

[6] To the extent Sinde suggests that background evidence can be relevant only to "explain an act or statement of the defendant," rather than law enforcement, we disagree. Sinde Br. at 13 (emphasis omitted). Indeed, we have upheld determinations by a district court that background evidence was relevant to explain the actions of law enforcement officers. *See, e.g.*, *United States v. Fitzgerald*, 542 F. App'x 30, 33 (2d Cir. 2013) (summary order) (concluding that testimony regarding a drug transaction that occurred before the charged conduct was relevant as background evidence to explain why officers targeted the defendant); *United States v. Graham*, 504 F. App'x 63, 66 (2d Cir. 2012) (summary order) (holding that admission of testimony "to explain the actions of the officers the night of [the defendant]'s arrest" was permissible).

where "the district court has conscientiously balanced the proffered evidence's probative value with the risk for prejudice, its conclusion will be disturbed only if it is arbitrary or irrational").

In sum, the district court did not abuse its discretion by admitting this evidence.

### III. Rule 33 Motion

Civitello Sr. argues that the district court erred by denying his motion for a new trial. In particular, he asserts that, because Kelly provided inconsistent and incredible testimony, and this testimony was central to the government's case, a new trial is warranted to avoid manifest injustice. Again, we are unpersuaded.

A district court's denial of a motion under Rule 33 is reviewed for abuse of discretion. *See United States v. Vinas*, 910 F.3d 52, 58 (2d Cir. 2018). The district court "has broad discretion to decide Rule 33 motions based upon its evaluation of the proof produced." *United States v. McPartland*, 81 F.4th 101, 123 (2d Cir. 2023). Rule 33 motions are "granted only in extraordinary circumstances." *United States v. Escalera*, 957 F.3d 122, 137 (2d Cir. 2020). Indeed, "[t]he ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice." *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001).

We have emphasized that "[a]ssessments of witness credibility and choices between competing inferences lie solely within the province of the jury," *United States v. Payne*, 591 F.3d 46, 60 (2d Cir. 2010), and only in rare circumstances should a court "intrude upon the jury function of credibility assessment," *United States v. Robinson*, 430 F.3d 537, 543 (2d Cir. 2005). Here, no such circumstances are present. The jury had the opportunity to observe Kelly testify and to weigh that testimony against other evidence in the case. *See United States v. Canova*, 412 F.3d 331, 349 (2d Cir. 2005). Civitello Sr. had the opportunity to call into question Kelly's credibility through cross-examination and during summation rebuttal. *See United States v. Cacace*, 796 F.3d 176, 192

14

(2d Cir. 2015) (per curiam). Moreover, as the district court noted, Kelly's testimony was "corroborated in large part by other evidence introduced by the [g]overnment." Joint App'x at 157. For example, Kelly testified that he met with the Civitellos on March 31, 2021 to deliver three kilograms of cocaine to Civitello Sr., and law enforcement surveillance corroborated that meeting. Kelly further testified that the next day he gave nine kilograms of cocaine to Sinde, who was going to arrange for Ingrao to deliver the drugs to the Civitellos, and that he placed the cocaine in the hidden compartment of a Jeep in Breezy Point, New York. That testimony was corroborated by a traffic stop by a trooper who discovered the same quantity of cocaine in a hidden compartment in the trunk of the Jeep. In addition, Civitello Sr.'s girlfriend, Jessica Hollenbeck, testified that, around the same time, Civitello Sr., *inter alia*, (1) told her the Jeep had a "box" welded into it and had been seized; (2) stated that he intended to create a fraudulent receipt for car repairs in an effort to distance him and his son from the traffic stop of the Jeep; and (3) gave her $400,000 in cash to hold for him (which was roughly equivalent to what Civitello Sr. would have paid if the transaction had been completed). Thus, the district court determined that "Kelly's testimony in this case was not so patently incredible such that [it] [could] reject [his] testimony despite the jury's evaluation." Joint App'x at 156–57 (internal quotation marks and citation omitted).

Accordingly, based on the trial record, we conclude that the district court did not abuse its discretion in making that determination and denying Civitello Sr.'s Rule 33 motion. *See United States v. McCourty*, 562 F.3d 458, 476 (2d Cir. 2009) ("[W]here the resolution of the Rule 33 motion depend[s] on assessment of the credibility of the witnesses, it is proper for the court to refrain from setting aside the verdict and granting a new trial." (second alteration in original) (internal quotation marks and citation omitted)).

15

## IV. Sentencing

Sinde challenges his sentence on two grounds. First, he asserts that his sentence is procedurally unreasonable because the district court incorrectly calculated his criminal history category.[7] Second, Sinde asserts that his sentence is substantively unreasonable because the district court overstated the seriousness of his criminal history and created unwarranted sentencing disparities in imposing the sentence. We find these sentencing challenges unpersuasive.[8]

### A. Procedural Reasonableness

"A sentence is procedurally unreasonable if the district court fails to calculate (or improperly calculates) the Sentencing Guidelines range . . . ." *United States v. Smith*, 949 F.3d 60, 66 (2d Cir. 2020) (internal quotation marks and citation omitted). "This Court reviews a district court's application of the Guidelines *de novo* . . . ." *United States v. Cramer*, 777 F.3d 597, 601 (2d Cir. 2015).

As relevant to his procedural challenge, Sinde received three criminal history points for a 1994 conviction for the unauthorized use of credit cards. For this offense, Sinde was sentenced to 10 months' imprisonment. In connection with this conviction, he pled guilty on February 28, 2006 to a violation of the terms of his supervised release, and was sentenced to six months'

---

[7] The district court determined that Sinde had a criminal history category of IV and a base offense level of 30, resulting in a United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") advisory range of 135 to 168 months.

[8] Sinde also argues that the district court should have granted a downward departure on the grounds that his prior convictions are old, with relatively short incarceration periods, and are supported by limited facts. "[W]here a defendant has not shown a violation of law or misapplication of the Guidelines, refusal to depart warrants vacatur only if the defendant points to clear evidence of a substantial risk that the judge misapprehended the scope of his [or her] departure authority." *United States v. Young*, 811 F.3d 592, 599 (2d Cir. 2016) (alterations adopted) (internal quotation marks and citation omitted). "The district court's silence on the issue does not support an inference that the court misunderstood its authority to depart." *United States v. Hurtado*, 47 F.3d 577, 585 (2d Cir. 1995). Here, Sinde points to no evidence in the record, let alone clear evidence, that the district court misunderstood its ability to downward depart, and thus he has identified no grounds to find error in the district court's decision not to do so.

imprisonment for that offense. He was released from custody on October 23, 2006. Because the term of imprisonment for the use of stolen credit cards and the related supervised release violation, together, amounted to a 16-month sentence, *see* U.S.S.G. § 4A1.2(k)(1), and because Sinde was released from custody in October 2006 for the supervised release violation, which was within 15 years of the commencement of the conduct in the instant case, *see* U.S.S.G. § 4A1.2(k)(2), the conviction was assigned three criminal history points.

Sinde argues this was error. In particular, he contends that this sentence for the supervised release violation ran concurrent to a different sentence for a supervised release violation related to a 1992 drug conviction for which he was sentenced to 165 months' imprisonment. He asserts that, for purposes of his criminal history category calculation, these supervised release convictions should be considered as the same sentence because they were imposed on the same day and were based on the same underlying conduct. *See* U.S.S.G. § 4A1.2(a)(2). Further, Sinde argues that, as they are the same sentence, the Guidelines dictate that the six-month sentence should have applied to the 1992 drug conviction, *id.*, and that, "[i]n such event, the 1994 conviction would remain at ten months incarceration and zero criminal history points would be assessed," Sinde Br. at 28. This argument, however, misapplies the Guidelines.

Section 4A1.2(a)(2) states that prior sentences will be considered the same sentence for purposes of calculating criminal history where "(A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day." U.S.S.G. § 4A1.2(a)(2). Neither of these grounds are satisfied here. As to the first ground, Sinde identified no evidence that the sentences resulted from offenses in the same charging instrument. Nor could he, as he was charged and convicted for the drug offense in the District of New Jersey, while he was charged and convicted of the credit card offense in the Southern District of New York. With

respect to the second ground, his sentences for the supervised release violations were not imposed on the same day, as he was sentenced for the violation as to the credit card theft on February 28, 2006, while he was sentenced for the violation as to the drug charge on February 16, 2006. Thus, the district court correctly determined that Sinde's supervised release sentences should not be considered the same sentence under Section 4A1.2(a)(2).

### B. Substantive Reasonableness

We generally review a sentence for "substantive reasonableness under a deferential abuse-of-discretion standard." *United States v. Hunt*, 82 F.4th 129, 142 (2d Cir. 2023). Under this deferential standard of review, "[i]f the ultimate sentence is reasonable," we will not "second guess the weight (or lack thereof) that the judge accorded to a given factor or to a specific argument made pursuant to that factor." *United States v. Pope*, 554 F.3d 240, 246–47 (2d Cir. 2009) (alteration in original). Instead, we consider whether a "factor, as explained by the district court, can bear the weight assigned it under the totality of circumstances in the case." *United States v. Cavera*, 550 F.3d 180, 191 (2d Cir. 2008) (en banc). We "will set aside only those sentences that are so shockingly high, shockingly low, or otherwise unsupportable as a matter of law that allowing them to stand would damage the administration of justice." *United States v. Muzio*, 966 F.3d 61, 64 (2d Cir. 2020) (internal quotation marks and citation omitted).

First, Sinde argues that the district court, in imposing the 168-month sentence, "significantly overstated the seriousness of his criminal history." Sinde Br. at 32. We disagree. The district court observed that the instant offense was Sinde's "seventh felony conviction and [] his third felony conviction in federal court," some of which "include[d] significant terms of incarceration." Sinde App'x at 110–11. The district court also explained, after summarizing a number of Sinde's prior convictions, that his "criminal history beg[an] at a young age and [was]

18

almost continuous . . . from the time that [he was] arrested and convicted [in the early 1990's] until the current conviction." *Id.* at 107. Based on this record, the seriousness of Sinde's criminal history "can bear the weight assigned it under the totality of circumstances in the case," *Cavera*, 550 F.3d at 191, and the district court's reliance on that factor, along with the other Section 3553(a) factors, did not result in a sentence that was "shockingly high . . . or otherwise unsupportable as a matter of law," *Muzio*, 966 F.3d at 64.

Sinde's argument that his 168-month sentence created unwarranted disparities among his co-defendants and other similarly situated defendants is also unavailing. As an initial matter, we have made clear that sentencing disparities are considered nationwide, not among co-defendants. *See United States v. Frias*, 521 F.3d 229, 236 (2d Cir. 2008). As for a nationwide disparity, Sinde argues that the average sentence of an individual sentenced under Section 2D1.1 since 2015, with criminal history category IV, was 93 months, with a median sentence of 78 months, substantially lower than the 168-month sentence he received. This comparison is inapposite, however, as it does not specify whether these individuals had Sinde's base offense level of 30. By contrast, the Pre-Sentence Report noted that defendants who were sentenced under Section 2D1.1 in fiscal years 2018 through 2022 for powder cocaine offenses, with a base offense level of 30 and criminal history category IV, received an average sentence of 180 months' imprisonment, with a median sentence of 140 months (excluding defendants who received a substantial assistance departure under U.S.S.G. § 5K1.1). In any event, even assuming *arguendo* that Sinde demonstrated a relevant sentencing disparity, that is "only one of several factors that must be weighted and balanced, and how that is done is a matter that remains firmly committed to the discretion of the sentencing judge." *United States v. Broxmeyer*, 699 F.3d 265, 297 (2d Cir. 2012) (internal quotation marks and citation omitted). Here, as noted above, the district court properly balanced

19

the factors enumerated in Section 3553(a), including, *inter alia*, Sinde's criminal history, the nature and seriousness of his criminal conduct, and the need for deterrence.

In sum, we conclude that the sentence was substantively reasonable.

*       *       *

We have considered Appellants' remaining arguments and conclude that they are without merit. Accordingly, we **AFFIRM** the judgments of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court